**TOSHIBA CORPORATION; Toshiba America, Inc.; and Toshiba Hawaii, Inc., Plaintiffs,**

v.

**UNITED STATES et al., Defendants.**

Court No. 86–10–01285.

United States Court of International Trade.

March 2, 1987.

Arent, Fox, Kintner, Plotkin & Kahn (Robert H. Huey, Washington, D.C., on the brief and at the argument), for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div. (J. Kevin Horgan, Washington, D.C., on the brief and at the argument), for defendants.

### MEMORANDUM OPINION AND ORDER

RAO, Judge:

The parties have agreed that the facts involved in this civil action are similar to those in *Matsushita Industrial Co., Ltd. et al v. United States,* 645 F.Supp. 939 (1986), in that both cases involve T.D. 71–76, a dumping determination as to television receivers from Japan, settlement agreements between the parties and the United States providing for payments by the Japanese manufacturers and an agreement by the defendants that T.D. 7176 would be revoked as to them as "soon as circumstances warrant" and that the traditional methodolgy" of accounting would be used in any annual reviews necessary under T.D. 7176.

Additionally, similar annual administrative reviews were initiated by the Commerce Department (Commerce), although the final results of the second annual review, for which the administrative work was completed by July, 1982, were not published until June 10, 1985. The third annual review, covering the period April 1, 1981 through March 31, 1982, resulted in a preliminary determination showing zero dumping margins for plaintiffs, but it has not been finalized by publication of final results in the Federal Register.

As to the fourth annual review covering the period April, 1982 to March 31, 1983, plaintiffs are in compliance with Commerce's request for data, which were verified in Japan, but Commerce, again, has not even issued *preliminary* results.

Commerce had established September 27, 1983 as the date for revocation of T.D. 71–76 as to plaintiffs and the partial fifth annual review, covering the period April 1, 1983 through September 27, 1983 was to have been completed by March 31, 1985. Plaintiffs submitted the information deemed necessary by Commerce by May, 1984. On September 19, 1986 Commerce announced that it required new data for this period, i.e., new comparison model selections, and this partial fifth round was rebegun at that time.

Plaintiffs had applied to Commerce for a revocation of T.D. 7176 as to their merchandise premised on submissions which showed that plaintiffs had made no sales at less than fair value (LTFV) for three review periods, and a notice of tentative revocation was published by Commerce on Sep-

tember 27, 1983. 48 *Fed.Reg.* 37,500 and 44,101 (1983). Unlike the tentative revocation notice in *Matsushita, supra,* this notice contained language to the effect that final revocation would not be forthcoming.

Commerce has notified plaintiffs that they would be required to respond to additional questionnaires for periods beyond September 27, 1983 and that a changed methodology would be employed in assessing whether dumping margins exist for the periods following September 27, 1983. Despite plaintiffs' protests that responses to these questionnaires are not in accordance with the settlement agreement and impose an undue burden on the plaintiffs, Commerce has informed them that it will use the "best information available" if plaintiffs do not respond to the questionnaires.

Plaintiffs seek a preliminary injunction enjoining Commerce from;

(1) conducting administrative reviews under T.D. 71–76 as to plaintiffs for periods subsequent to September 27, 1983, until and unless it is determined that final revocation of T.D. 71–76 as to plaintiffs is not warranted, and

(2) changing its traditional methodology for determining market value for any administrative review period up to September 27, 1983.

Defendant opposes the motion for the preliminary injunction on the grounds that the proposed injunction grants plaintiffs complete relief, that the ordinary consequences of antidumping duty procedures do not constitute irreparable harm, that plaintiffs are not likely to prevail on the merits of their claims, that the balance of hardships favors the defendants, and that the proposed injunction is contrary to the public interest.

Defendants' opposition is not well taken. First, the preliminary injunction will not afford plaintiffs complete relief. Plaintiffs claim that there has been a breach of contract and the complaint alleges inordinate delay of the administrative process. The injunction will not determine the breach of contract cause of action and will leave for further determination the lack of perform-

ance of Commerce as a party to the settlement agreement.

Second, while it is true that the ordinary consequences of antidumping duty procedures do not constitute irreparable harm, Commerce is not seeking ordinary annual reviews. It seeks to compel plaintiffs to submit data for three years within 45 days and to furnish these data under new accounting methodology. Plaintiffs have averred that it is improbable that they will be able to comply with Commerce's demands and that if Commerce follows its alternative course, using the best information available (e.g., the domestic manufacturers' data), they may be subject to an antidumping determination even though they are not indeed importing their merchandise at LTFV.

Third, the arguments advanced by defendants that plaintiffs are not likely to prevail on the merits of their claims are not well taken. This court, in *Mashushita, supra,* addressed this very issue, and found, without deciding that the plaintiff *would* prevail, that enough of a case had been made out in the pleadings to rule out the probability that plaintiffs *cannot* prevail on the merits. Plaintiffs' claims include one for breach of contract. Defendants have not denied that a valid contract exists, nor that they have delayed in their performance despite the fact that plaintiffs have completed their performance to the extent of the payment required by the terms of the agreement and the timely submission of information for the annual administrative reviews, until it appeared evident to them that the defendants would not voluntarily perform. Plaintiffs then sought relief in this court.

The balance of hardships favors the plaintiffs in this instance. Plaintiffs have alleged and argued that the change in methodology, as well as Commerce's demand that they produce data for three years of sales within 45 days will require going through invoices by hand and involve thousands of invoices including both sales slips and receipts, and they have indicated that what the government is requiring of them may be impossible in some instances.

This constitutes a hardship to the plaintiffs as opposed to the lack of hardship to Commerce if the preliminary injunction is granted, since Commerce is merely being required to refrain from activity without losing its right to require data on sales at LTFV if it is determined by this Court that T.D. 7176 should not be revoked as to these plaintiffs.

Whereas, in *UST, INC. v. United States*, 648 F.Supp. 1 (1986), the Court found that "plaintiffs should have ready access to data for the periods in question", here plaintiffs have demonstrated that access to the data demanded by Commerce will be extremely difficult under the new methodology, and under the time constraints imposed by Commerce.

In *UST, Inc.*, relied on by defendants, the court refused to grant mandatory injunctive relief to plaintiffs under circumstances claimed by defendants to be similar to those involved herein. However, *UST, Inc.* can be distinguished from the instant case. The Court in *UST, Inc.* held that preparing the [answers to] questionnaires, despite plaintiffs' allegations that this will require massive amounts of time and other resources does not satisfy prevailing tests for immediate and irreparable harm. One test for determining the issue of irreparable harm established in *American Hosp. Supply v. Hospital Products Ltd.*, 780 F.2d 589, 595 (1986), is whether the loss can be made up by a judgment for damages after trial. There is no statutory provision for the recovery of the costs of complying with an invalid or unnecessary request for data pursuant to an antidumping annual administrative review and the loss to plaintiffs, were the injunction not to issue, would indeed be irreparable.

As to the factor of the public interest, it is the feeling of this court that it will best be served if the motion for the preliminary injunction is granted. The public interest is always best served when a government agency expends its resources to perform its duties in a timely and expeditious manner, considering only relevant data. The public interest is also served when government agencies expeditiously perform their agree-ments. If it should be determined that T.D. 71–76 should be revoked as to plaintiffs, any additional review which Commerce would make beyond the date that T.D. 7176 should be revoked as to plaintiffs would be an unwarranted utilization of agency resources. *Matsushita, supra.*

The Court distinguishes *UST, Inc.* further in that it is not apparent from the opinion whether a settlement agreement was involved in that case or whether the plaintiffs had claimed that the agreement had been or was about to be breached by the defendants.

Based on the above considerations, the Court finds that the plaintiffs have met the requirements for a grant of preliminary injunctive relief and grants the preliminary injunction to the following extent:

■ The Court preliminarily enjoins defendants from conducting any administrative reviews under T.D. 7176 as to these plaintiffs until it has made a final determination as to the final revocation of T.D. 7176 with respect to plaintiffs' products covered by that order.

■ As to any reviews conducted by Commerce as necessary for its determination as to whether T.D. 71–76 should be revoked as to plaintiffs' products, Commerce is enjoined from changing its traditional methodology for determining any market values or other data necessary for its determination of this issue, that is Commerce must examine the information it requests and verify it using accounting procedures that were agreed to in the settlement agreement.

The Court reserves all other matters and motions now pending in this case.