**MATSUSHITA ELECTRIC INDUSTRIAL CO., et al.,
Appellees,**

v.

**The UNITED STATES, et al.,
Appellants.**

**Appeal No. 86–1678.**

United States Court of Appeals,
Federal Circuit.

July 2, 1987.

J. Kevin Horgan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellants. With him on the brief, were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief, was John McInerney, Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.

A. Paul Victor, Weil, Gotshal & Manges, New York City, argued, for appellees. With him on the brief, were Stuart M. Rosen, Philip A. Byler, Charles H. Bayar and Debra J. Pearlstein.

Before FRIEDMAN, NEWMAN, and ARCHER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal by the government from a preliminary injunction entered on August 12, 1986, by the Court of International Trade, prohibiting the government from taking certain administrative actions relating to a "dumping" finding it made against the appellees Matsushita Electrical Industrial Company, et al. (Matsushita).

Matsushita Elec. Indus. Co. v. United States, 645 F.Supp. 939 (CIT 1986). We reverse.

## I

A. In 1971, the Secretary of the Treasury published T.D. 71–76, a "finding of dumping" that reported the Secretary's determination "that an industry in the United States is being injured by reason of the importation of television receiving sets, monochrome and color, from Japan sold at less than fair value within the meaning of section 201(a) of the Antidumping Act of 1921, as amended [then 19 U.S.C. § 160(a), now § 1673]." 5 Cust.Bull. 151, 152, 36 Fed.Reg. 4597 (1971).

The administration of the Antidumping Act was transferred to the Department of Commerce (Commerce) in 1979. See Exec. Order No. 12,175, 3 C.F.R. 463 (1980). In 1980, Commerce entered into settlement agreements with the importers of color television receivers from Japan, including Matsushita, respecting their potential liability for dumping duties assessed pursuant to T.D. 71–76. See Montgomery Ward & Co., Inc. v. Zenith Radio Corp., 673 F.2d 1254 (CCPA), cert. denied, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). The agreements provided for the payment of roughly $70 million—$12,526,000 of that by Matsushita—in settlement of all claims for duties assessed pursuant to T.D. 71–76 on television receivers imported on or before March 31, 1979.

B. Under 19 U.S.C. § 1675(a) (1984), Commerce is required to review at least annually the basis and amount of duty to be assessed under an antidumping duty order, and to publish the results of each such review in the Federal Register. The Antidumping Act provides that, after such a review, Commerce "may revoke" the antidumping duty order. 19 U.S.C. § 1675(c) (1984). Commerce's regulations authorize revocation

> [w]henever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order ... are no longer being made at less than fair value ... and is satisfied that there is no likeli-

hood of resumption of sales at less than fair value.... Ordinarily, consideration of such revocation ... will be made only subsequent to [an administrative] review. 19 C.F.R. § 353.54(a) (1981–86) (Commerce's § 353.54 is substantively identical to the Treasury regulation that it replaced, § 153.44 (1980)).

The revocation of an antidumping duty order is presaged by the publication by Commerce of a "Notice of Tentative Determination to Revoke or Terminate." 19 C.F.R. § 353.54(e) (1981–86). "As soon as possible after publication," 19 C.F.R. § 353.54(f), but after opportunity has been provided "for interested parties to present views with respect to the tentative revocation," 19 C.F.R. § 353.54(e),

> the Secretary will determine whether final revocation ... is warranted. In cases where an application for a revocation ... is based on the absence of sales at less than fair value with respect to the imported merchandise and the dispositive date for establishing a two-year period of no sales at less than fair value is the date of publication of the Finding or Order, the Secretary may determine that a final revocation ... is warranted only if the firm involved provides information showing no sales at less than fair value with respect to the subject merchandise up to the date of publication of the "Notice of Tentative Determination to Revoke or Terminate."

19 C.F.R. § 353.54(f) (1981–86). This court has held that, as the regulation says, such data must be current "up to the date of publication of the 'Notice of Tentative Determination to Revoke or Terminate.'" *Freeport Minerals Co. v. United States,* 776 F.2d 1029 (Fed.Cir.1985).

C. Commerce published the results of its first and second administrative reviews of T.D. 71–76 (for the periods April 1 through March 31, 1979–80 and 1980–81), on June 5, 1981 and August 18, 1983, respectively. *See* 46 Fed.Reg. 30,163; 48 Fed.Reg. 37,506 (preliminary), 50 Fed.Reg. 24,278 (final: June 10, 1985). Commerce found no dumping by Matsushita for both periods, and published a tentative revoca-tion of T.D. 71–76 with respect to Matsushita on August 18, 1983. 48 Fed.Reg. 37,508.

Third and fourth administrative reviews under T.D. 71–76, covering April 1 through March 31, 1981–83, were initiated on November 27, 1985. 50 Fed.Reg. 48,825. In a July 1986 affidavit in opposition to the preliminary injunction on appeal here, Commerce asserted that it "expect[ed] to complete the third and fourth reviews by December 1, 1986." Fifth and sixth administrative reviews, covering April 1, 1983 through February 28, 1985, were initiated on July 9, 1986, 51 Fed.Reg. 24,883, and Commerce "expect[ed] to complete these reviews by August 1987." The seventh administrative review, covering March 1, 1985 through February 28, 1986, was initiated on April 18, 1986, 51 Fed.Reg. 13,273, and Commerce "intend[ed] to issue final results for this review period by May 1987."

Commerce has provided no estimation of when it will issue a final decision on its tentative determination to revoke T.D. 71–76 as to Matsushita.

D. On July 18, 1986, Matsushita commenced this action in the Court of International Trade seeking preliminary and permanent equitable relief against Commerce. Matsushita sought an order requiring Commerce to (1) refrain from conducting administrative reviews of T.D. 71–76 for periods after August 18, 1983; (2) complete administrative reviews of T.D. 71–76 for periods extending from April 1, 1981 through August 18, 1983, pursuant to a schedule established by the court; (3) use "traditional" methodologies in calculating dumping margins; and (4) determine, based upon administrative reviews of periods prior to August 18, 1983, whether final revocation of T.D. 71–76 as to Matsushita is warranted. At the same time, Matsushita sought and obtained a temporary restraining order ("TRO"), which

> ORDERED that, until July 23, 1986, [Commerce] be restrained from: taking any steps to conduct administrative reviews under T.D. 71–76 as to [Matsushita] for periods subsequent to August 18, 1983; taking any other actions inconsist-

ent with finalizing revocation as of August 18, 1983; and from altering the traditional methodology for reviews of periods up to that date and that on July 23, 1986, [Commerce] show cause why good cause does not exist for extending the restraint until August 8, 1986....

After a hearing on July 23, 1986, the Court of International Trade continued the TRO indefinitely.

On August 12, 1986, the Court of International Trade entered a preliminary injunction:

The Court preliminarily enjoins [Commerce] from conducting any administrative reviews under T.D. 71–76 as to [Matsushita] until it has made a final determination as to the final revocation of T.D. 71–76 with respect to [Matsushita]'s products covered by that order. [Matsushita has] demonstrated that they have acted promptly in supplying Commerce with all the data requested and that they have attempted to adhere to pricing formulae which would not put them within the ambit of T.D. 71–76 and which would keep them in compliance with the terms of the settlement agreement. Commerce, in that agreement, provided that it would "promptly revoke or modify T.D. 71–76 as soon as circumstances warrant such revocation or modification in accordance with procedures set forth in ... applicable regulations...." Considering that Commerce has given no reason for the delay in making a final determination as to whether to revoke T.D. 71–76 as to [Matsushita]'s television sets, this Court finds that [Matsushita] would be irreparably harmed by having to comply with Commerce's demands for data and verification of those years beyond those involved in the revocation determination decision. The compilation of data and its verification requires an expenditure of effort in both human and other resources for which [Matsushita] will not be recompensed should it be found that plaintiffs have not been dumping and that T.D. 71–76 is revoked as to them. ... [I]t is the opinion of this Court that a prima facie case can be made out on the allegations in the complaint and the

affidavits that have been filed in support of [Matsushita]'s motions. Additionally, [Commerce has] not adduced a reasonable ground for not acting on [Matsushita]'s application for revocation of the dumping order as to them....

If the preliminary injunction does not issue, [Matsushita] will be required to provide a large amount of information and verify it for years beyond August 18, 1983, both irrelevant activities if T.D. 71–76 was revoked as to their merchandise. If Commerce is enjoined from including [Matsushita]'s television imports in any administrative review conducted for years *after* those required for a determination pertaining to revocation of T.D. 71–76 as to [Matsushita] and it is later determined that T.D. 71–76 should *not* be revoked as to [Matsushita], it can then determine whether [Matsushita] fall[s] within the purview of the dumping order for those years. Whereas [Matsushita] would be required to provide a large amount of information and provide for its verification if the preliminary injunction does not issue, [Commerce is] merely being required to refrain from activity without losing any advantage if the preliminary injunction issues. The balance of hardships thus favors [Matsushita].

The public interest will also be served if the motion for the preliminary injunction is granted. The public interest is best served when a government agency expends its resources to perform its duties in a timely and expeditious manner, considering only relevant data. If it should be determined that T.D. 71–76 should be revoked as to [Matsushita] any additional review which Commerce would make as to entries subsequent to the revocation would be an unwarranted utilization of agency resources.

The Court also decides that, since there can be no change in the information available for entries of [Matsushita]'s color television sets for the periods [of the first three administrative reviews], that [sic] Commerce cannot logically request new (not "stale") informa-

tion for those years. Nor can [Matsushita] logically be expected to have maintained their records for those years based on Commerce's new accounting procedures. Commerce must examine the information and verify it using accounting procedures that were agreed to during these time periods.

645 F.Supp. at 941–42.

## II

The preliminary injunction issued by the Court of International Trade must be upheld if that court properly found that Matsushita had shown

(1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors [Matsushita].

*Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983). Although the Court of International Trade did not discuss the issues in the usual order, it found that Matsushita had established these four criteria.

We hold that the court's finding of irreparable injury was clearly erroneous, and that the preliminary injunction therefore must be reversed. We do not address the findings of the Court of International Trade on the three other elements.

The court's finding of irreparable injury was based upon Matsushita's

having to comply with Commerce's demands for data and verification of those years beyond those involved in the revocation determination decision. The compilation of data and its verification requires an expenditure of effort in both human and other resources for which [Matsushita] will not be recompensed should it be found that plaintiffs have not been dumping and that T.D. 71–76 is revoked as to them.

645 F.Supp. at 942.

■ The expenses and effort involved in the defense of litigation do not constitute "irreparable injury" that may justify a preliminary injunction. *See FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980); *Renegotiation Bd. v. Bannercraft Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Similarly, "the ordinary consequences of antidumping duty procedures do not constitute irreparable harm." *Toshiba Corp. v. United States,* 657 F.Supp. 534, 535 (CIT 1987); *see also UST, Inc. v. United States,* 21 Cust. B. & Dec. No. 12, p. 38, 42 (CIT 1987); *UST, Inc. v. United States,* 648 F.Supp. 1, 5 (CIT 1986); *Nissan Motor Corp. in U.S.A. v. United States,* 21 Cust. B. & Dec. No. 4, p. 32, 37 (CIT 1986); *Hyundai Pipe Co. v. United States Int'l Trade Comm'n,* 650 F.Supp. 174, 176–77 (CIT 1986).

■ The Court of International Trade did not find anything unique about the "effort in both human and other resources" that Matsushita would have to "expend" to comply with Commerce's seemingly routine requests. *Cf. Toshiba,* 657 F.Supp. at 535. As the court noted in *Hyundai,* "Commerce issues questionnaires in every case where a party requests administrative review under [19 U.S.C. § 1675]." 650 F.Supp. at 176.

Matsushita's situation is the direct result of its having participated in predatory pricing behavior in violation of the antidumping statute. Unless and until Commerce revokes the dumping finding, Matsushita is required to complete the questionnaires to facilitate Commerce's administrative reviews. As the Supreme Court admonished in a similar setting, Matsushita "must remember that those caught violating the Act must expect some fencing in." *FTC v. National Lead Co.,* 352 U.S. 419, 431, 77 S.Ct. 502, 510, 1 L.Ed.2d 438 (1957).

The Court of International Trade criticized Commerce's failure to act on Matsushita's "application for revocation of the dumping order" as to it. The court did not, however, direct Commerce to complete its review of T.D. 71–76 for the period April 1, 1981 through April 18, 1983 by a specified date, as Matsushita had requested the court to do and as the court has done in other situations. *See, e.g., UST,* 648

**510**

F.Supp. at 6 ("The parties will adhere to the schedule [to complete the administrative reviews] proposed by defendant United States as modified and extended by this Court"); *Nissan,* 21 Cust. B. & Dec. No. 4 at 37 ("[A] proposed schedule for completion of the reviews ... has been submitted in this action and the Court intends to have the ITA abide by these deadlines"); *accord American Permac, Inc. v. United States,* 642 F.Supp. 1187, 1192 (CIT 1986) ("[A] judicial action to enforce the statutory deadline ... clearly would be available to participants in ITA review proceedings ... by virtue of this court's [full equitable] jurisdiction under 28 U.S.C. § 1581(i)(4)"); *see also Allen v. Regan,* 607 F.Supp. 133, 135 (CIT 1985) ("Accordingly, defendants [Treasury] are directed to complete their investigation ... within 90 days of judgment in this matter, and within 30 days of completion of that investigation, to provide plaintiff with a decision with regard to his license application").

Instead, the court enjoined Commerce from conducting, with respect to Matsushita, any further administrative reviews under T.D. 71–76 until it had made the final decision. It based that injunction upon a finding of irreparable injury that was clearly erroneous. The preliminary injunction cannot stand.

## CONCLUSION

The preliminary injunction of the Court of International Trade is reversed.

REVERSED.