**SHARP CORP., et al., and Toshiba Corp., et al., Plaintiffs–Appellees,**

v.

**The UNITED STATES, et al., Defendants–Appellants.**

**Nos. 87–1087, 87–1252 and 87–1253.**

United States Court of Appeals, Federal Circuit.

Jan. 21, 1988.

Peter J. Gartland, Shanley & Fisher, New York City, argued, for plaintiffs-appellees Sharp. Charles D. Donahue, Shanley & Fisher, of New York City, of counsel.

Robert H. Huey, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., argued, for plaintiff-appellee Toshiba. Mira Davidovski, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., of counsel.

David M. Cohen, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendants-appellants. J. Kev- in Horgan, Dept. of Justice, Washington, D.C., of counsel.

Before FRIEDMAN, NEWMAN, and ARCHER, Circuit Judges.

FRIEDMAN, Circuit Judge.

These are consolidated appeals by the United States from preliminary injunctions of the Court of International Trade that barred the government from taking certain actions in connection with its administrative reviews of portions of an antidumping order. We reverse.

I

A. The pertinent background facts are set forth in our opinion in *Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505 (Fed.Cir.1987), where we reversed a similar preliminary injunction of the Court of International Trade:

In 1971, the Secretary of the Treasury published T.D. 71–76, a "finding of dumping" that reported the Secretary's determination "that an industry in the United States is being injured by reason of the importation of television receiving sets, monochrome and color, from Japan sold at less than fair value within the meaning of section 201(a) of the Antidumping Act of 1921, as amended [then 19 U.S.C. § 160(a), now § 1673]." 5 Cust.Bull. 151, 152, 36 Fed.Reg. 4597 (1971). [The appellees Sharp Corporation (Sharp) and Toshiba Corporation (Toshiba) were two of the parties subject to the antidumping order.]

The administration of the Antidumping Act was transferred to the Department of Commerce (Commerce) in 1979. *See* Exec. Order No. 12,175, 3 C.F.R. 463 (1980). In 1980, Commerce entered into settlement agreements with the importers of color television receivers from Japan, including [Sharp and Toshiba], respecting their potential liability for dumping duties assessed pursuant to T.D. 71–76. *See Montgomery Ward & Co., Inc. v. Zenith Radio Corp.*, 673 F.2d 1254 (CCPA), *cert. denied*, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). The

agreements provided for the payment of roughly $70 million [of which Sharp paid $9,124,000 and Toshiba $7,600,000] ... in settlement of all claims for duties assessed pursuant to T.D. 71–76 on television receivers imported on or before March 31, 1979.

... Under 19 U.S.C. § 1675(a) (1984), Commerce is required to review at least annually the basis and amount of duty to be assessed under an antidumping duty order, and to publish the results of each such review in the Federal Register. The Antidumping Act provides that, after such a review, Commerce "may revoke" the antidumping duty order. 19 U.S.C. § 1675(c) (1984). Commerce's regulations authorize revocation

> [w]henever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order ... are no longer being made at less than fair value ... and is satisfied that there is no likelihood of resumption of sales at less than fair value.... Ordinarily, consideration of such revocation ... will be made only subsequent to [an administrative] review.

19 C.F.R. § 353.54(a) (1981–86) (Commerce's § 353.54 is substantively identical to the Treasury regulation that it replaced, § 153.44 (1980)).

The revocation of an antidumping duty order is presaged by the publication by Commerce of a "Notice of Tentative Determination to Revoke or Terminate." 19 C.F.R. § 353.54(e) (1981–86). "As soon as possible after publication," 19 C.F.R. § 353.54(f), but after opportunity has been provided "for interested parties to present views with respect to the tentative revocation," 19 C.F.R. § 353.54(e),

> the Secretary will determine whether final revocation ... is warranted. In cases where an application for a revocation ... is based on the absence of sales at less than fair value with respect to the imported merchandise and the dispositive date for establishing a two-year period of no sales at less than fair value is the date of publication of the Finding or Order, the Secretary may determine that a final revocation

> ... is warranted only if the firm involved provides information showing no sales at less than fair value with respect to the subject merchandise up to the date of publication of the "Notice of Tentative Determination to Revoke or Terminate."

19 C.F.R. § 353.54(f) (1981–86).

823 F.2d at 506–07.

B. 1. Following its administrative review of the two separate one-year periods between April 1, 1978 and March 31, 1981, for which it found there was no dumping, Commerce, on September 27, 1983, published a notice of its tentative revocation of TD 71–76 with respect to Toshiba. 48 Fed. Reg. 44101 (1983). In that notice, Commerce pointed out that Toshiba had made no shipments of television receivers between April 1, 1980 and March 31, 1982. The notice specified that a final revocation "could not be issued until administrative reviews [have] been completed on import of [television] receiving sets from April 1, 1982, through the date of this notice." Commerce has initiated three other annual reviews covering the period from April 1, 1981 to September 27, 1983.

Toshiba filed its complaint in the Court of International Trade on October 15, 1986. The complaint stated that it was designed "to require Defendants to comply with the antidumping law ... as well as [the] April 28, 1980 Settlement Agreement...." Specifically, Toshiba sought:

> (i) to require Defendants to complete the administrative review under T.D. 71–76, the dumping finding covering television receiving sets, monochrome and color, from Japan, as to merchandise produced by Toshiba Corporation ("TC") for the period prior to September 27, 1983, specifically, the period April 1, 1981—March 31, 1982 ("third round"), and to conduct and complete such reviews for the periods April 1, 1982—March 31, 1983 ("fourth round"), and April 1, 1983 —September 27, 1983 ("partial fifth round") [sic] pursuant to a schedule established by the Court;

> (ii) to compel Defendants to determine, on the basis of the third, fourth, and

partial fifth round reviews and Plaintiffs' assurances or, in the alternative, on the record in the proceeding undertaken by the Department of Commerce regarding the likelihood of the resumption of sales at less than fair value, whether final revocation of T.D. 71–76 as to TC is warranted;

(iii) to enjoin Defendants from conducting any administrative reviews of T.D. 71–76, as to merchandise produced by TC for periods after September 27, 1983, unless and until it is determined that final revocation of T.D. 71–76 as to TC is not warranted, and;

(iv) to require Defendants to use in these administrative reviews of Plaintiffs' merchandise, the "traditional methodology" for determining whether dumping margins exist, in accordance with the Settlement Agreement.

2. Following its review of the same two-year period, Commerce found that Sharp either had not dumped or had engaged in only a *de minimis* margin of dumping, and on August 18, 1983 published notice of its tentative revocation of TD 71–76 with respect to Sharp. 48 Fed.Reg. 37506, 37508 (1983). Commerce also initiated administrative reviews of Sharp for the five subsequent periods between April 1, 1981 and February 28, 1986, but has not published the result of any of those reviews.

Sharp filed its complaint in the Court of International Trade on October 20, 1986. The complaint made substantially the same allegations and sought substantially the same relief as the Toshiba complaint.

C. The Court of International Trade granted preliminary injunctions in both cases.

The court rendered its major opinion in the *Toshiba* case. It held that Toshiba had met the requirements for a preliminary injunction with respect to irreparable injury. The court stated:

[W]hile it is true that the ordinary consequences of antidumping duty procedures do not constitute irreparable harm, Commerce is not seeking ordinary annual reviews. It seeks to compel plaintiffs to submit data for three years within 45 days and to furnish these data under new accounting methodology. Plaintiffs have averred that it is improbable that they will be able to comply with Commerce's demands and that if Commerce follows its alternative course, using the best information available (e.g., the domestic manufacturers' data), they may be subject to an antidumping determination even though they are not indeed importing their merchandise at LTFV.

The court further ruled that Toshiba had shown that it probably would prevail on the merits, that the balance of hardship favored Toshiba, and that the public interest favored a preliminary injunction. The court entered the following injunction:

The Court preliminarily enjoins defendants from conducting any administrative reviews under T.D. 7176 [sic] as to these plaintiffs until it has made a final determination as to the final revocation of T.D. 7176 with respect to plaintiffs' products covered by that order.

[2] As to any reviews conducted by Commerce as necessary for its determination as to whether T.D. 71–76 should be revoked as to plaintiffs' products, Commerce is enjoined from changing its traditional methodology for determining any market values or other data necessary for its determination of this issue, that is Commerce must examine the information it requests and verify it using accounting procedures that were agreed to in the settlement agreement.

In its opinion in *Sharp*, rendered three days after *Toshiba*, the court ruled:

The motion for the preliminary injunction in the instant action is supported by the same legal arguments in this case as in *Toshiba* and the defendants have opposed the issuance of the preliminary injunction herein on the same grounds that they relied on in that case.

Without reiterating all the reasons why the preliminary injunction should issue herein (since they are those which supported the granting of the motion for the preliminary injunction in *Toshiba*), the Court hereby grants plaintiffs' mo-

tion for a preliminary injunction herein, and the defendants hereby are

(1) temporarily enjoined and restrained from taking any steps to conduct administrative reviews under T.D. 71–76 as to the plaintiffs for periods subsequent to August 18, 1983, taking any other actions inconsistent with finalizing revocation or denying recovation [sic] of T.D. 71–76 as to plaintiffs; and from altering the "traditional methodology" for reviews of periods up to August 18, 1983.

In each opinion the court stated that it "reserves all other matters and motions now pending in this case." *Toshiba Corp. v. United States,* 657 F.Supp. 534 (Ct. Int'l Trade 1987); *Sharp Corp. v. United States,* No. 86–10–01299 (Ct. Int'l Trade Mar. 5, 1987) (unpublished order).

## II

■ The government contends that the Court of International Trade had no jurisdiction to entertain these actions. It urges us not only to vacate the preliminary injunction but "also [to] remand these cases with instructions to dismiss the actions below for lack of jurisdiction because in *Toshiba* and *Sharp* the [Court of International Trade] is undeniably conducting proceedings in excess of. its jurisdiction."

The government recognizes that the Court of International Trade "has jurisdiction under the All Writs Act, 28 U.S.C. § 1651, to compel antidumping determinations which have been unreasonably delayed in order to preserve the court's jurisdiction to review those final determinations." The government argues, however, that in these cases the Court of International Trade has attempted to control the manner in which Commerce conducts its administrative review of antidumping orders and that this judicial foray exceeds the court's authority.

The complaints in these cases, however, seek to compel Commerce to complete its processing of its ongoing administrative reviews and to decide whether TD 71–76 should be revoked with respect to Sharp and Toshiba. The government recognizes that the Court of International Trade has the authority to compel such action by

Commerce if Sharp and Toshiba can establish that they are entitled to that relief. It is therefore difficult to understand the basis for the government's contention that the Court of International Trade has no jurisdiction over these cases.

The government's argument that the Court of International Trade has no authority to control Commerce's administrative reviews of the antidumping order really is a contention that judicial review of Commerce's interlocutory actions in conducting such review is premature, not that the court has no jurisdiction to consider the question. It is an aspect of the exhaustion-of-administrative-remedies doctrine—that judicial review of administrative action is inappropriate unless and until the person seeking to challenge that action has utilized the prescribed administrative procedures for raising the point. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). *See generally* 4 K. Davis, *Admin.Law* § 26.1 (1983).

As we explain in part III, we reverse the preliminary injunctions because Sharp and Toshiba would not suffer irreparable injury from complying with Commerce's directives relating to the administrative review. In these circumstances we find it unnecessary to consider the government's contention that any judicial review of the methods Commerce is using to conduct its administrative review must await Commerce's final decision on Sharp's and Toshiba's request that the antidumping order be revoked with respect to them.

## III

■ On the merits, we agree with the government that the preliminary injunction cannot stand. As in *Matsushita,* the Court of International Trade's finding that permitting Commerce to proceed with its administrative reviews would subject Sharp and Toshiba to irreparable injury is clearly erroneous.

Although there are distinctions between the present cases and *Matsushita,* the principle applied in *Matsushita* is equally applicable to the present cases and requires the same result: reversal of the preliminary injunction. *Cf. also UST, Inc. v. United*

*States*, 831 F.2d 1028 (Fed.Cir.1987), upholding, on the basis of *Matsushita*, the decision of the Court of International Trade (speaking through a different judge) that denied a preliminary injunction in a similar antidumping case (involving a different commodity) because "the appellants had not shown the irreparable injury necessary to justify a preliminary injunction." 831 F.2d at 1032.

The scope of the injunction in *Matsushita* was similar to those in the present cases. As we noted in *Matsushita*, there the Court of International Trade enjoined Commerce "from conducting any administrative reviews under T.D. 71–76 ... until it has made a final determination as to the final revocation of T.D. 71–76 with respect to" Matsushita. The Court of International Trade also stated in that case that Commerce could not request "new" information for the period after the first three administrative reviews. 823 F.2d at 508–09. Although the latter statement did not specifically bar Commerce from changing its traditional methodology in conducting administrative reviews (as did the preliminary injunctions in the present case), that was its practical effect. For the court stated that "Commerce must examine the information and verify it using accounting procedures that were agreed to during these time periods" (823 F.2d at 509). The "new" information to which the Court of International Trade referred was based upon the new methodology.

The basis for the finding of irreparable injury in *Matsushita*, as we noted,

> was based upon Matsushita's
>> having to comply with Commerce's demands for data and verification of those years beyond those involved in the revocation determination decision. The compilation of data and its verification requires an expenditure of effort in both human and other resources for which [Matsushita] will not be recompensed should it be found that plaintiffs have not been dumping and that T.D. 71–76 is revoked as to them.

823 F.2d at 509.

In the present cases, the Court of International Trade similarly based its finding of irreparable injury on the "hardship" to Toshiba (and presumably also to Sharp) of complying with Commerce's request for information. The court stated that "Commerce's demand that they produce data for three years of sales within 45 days will require going through invoices by hand and involve thousands of invoices including both sales slips and receipts, and they have indicated that what the government is requiring of them may be impossible in some instances." As the government points out, however, "at the time when the CIT issued the preliminary injunctions in *Toshiba* and *Sharp*, Commerce was only asking Toshiba and Sharp to respond to a single questionnaire covering a one year time period."

The ground of the Court of International Trade's finding of irreparable injury thus is basically the same as that found insufficient in *Matsushita* to show such injury: the added burden that answering Commerce's questionnaire and furnishing information to Commerce would impose upon the companies subject to the dumping orders.

For the reasons explained in *Matsushita*, compliance with that request of Commerce does not constitute the kind of irreparable injury necessary to support a preliminary injunction. The factual distinctions between these cases and *Matsushita* do not justify a different result.

## IV

Our reversal of the preliminary injunctions carries no implication with respect to any of the remaining issues in these cases which, as noted, the Court of International Trade specifically stated it was not deciding. More particularly, we indicate no views regarding the appropriate disposition by the Court of International Trade of the pending requests for mandamus relief directing Commerce expeditiously (1) to decide the pending administrative reviews, and (2) to determine whether the antidumping order should be permanently revoked with respect to *Sharp* and *Toshiba*.

In *UST,* we indicated our concern about "Commerce's lengthy and seemingly unwarranted delay in completing administrative reviews of antidumping orders. The failure promptly to determine whether to make final a tentative decision to revoke is particularly troublesome." 831 F.2d at 1032. We also pointed out that Commerce's delay "appears attributable in part to a misunderstanding of our decision in *Freeport Minerals Co. v. United States,* 776 F.2d 1029 (Fed.Cir.1985)," which held "only that the data upon which Commerce relied in determining whether to make final a tentative determination to revoke 'must be current "up to the date of publication of the 'Notice of Tentative Determination to Revoke or Terminate,' " ' " but not "up to the date of the final determination." 831 F.2d at 1032.

The government has recognized the power of the Court of International Trade to grant such affirmative relief in appropriate circumstances. The determination whether to do so and the terms and conditions of any directive to Commerce are matters for the Court of International Trade to determine in the first instance, in the exercise of its sound discretion.

## CONCLUSION

The preliminary injunctions of the Court of International Trade are

REVERSED.