Slip Op 09 - 128

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| | : | |
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: MUSGRAVE, Senior Judge |
| | : | Court No. 09-00110 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| SAINT-GOBAIN ABRASIVES, INC., HEBEI JIKAI INDUSTRIAL GROUP CO., LTD., HUSQVARNA CONSTRUCTION PRODUCTS NORTH AMERICA, INC., EHWA DIAMOND INDUSTRIAL CO., LTD., and BOSUN TOOLS GROUP CO., LTD., | : | |
| | : | |
| Defendant-Intervenors. | : | |
| | : | |

## OPINION AND ORDER

[Motion to stay denied.]

Dated:  November 4, 2009

*Wiley, Rein & Fielding LLP* (*Daniel B. Pickard*), for the plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White*, *Jr*., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; (*Delisa M. Sanchez*), Office of the Chief Counsel for Import Administration, U.S. Department of Commerce; (*Christine Sohar Henter*), Of Counsel, for the defendant U.S. Department of Commerce.

*Akin Gump Strauss Hauer & Feld LLP* (*J. David Park*), counsel for the defendant-intervenor Ehwa Diamond Industrial Co., Ltd.

*Fischer Fox Global PLLC* (*Lynn M. Fischer Fox*) for the defendant-intervenor Saint-Gobain Abrasives, Inc.

*Alston & Bird, LLP*, (*Kenneth G. Weigel*) for the defendant-intervenors Hebei Jikai Industrial Group Co., Ltd., and Husqvarna Construction Products North America, Inc.

*DeKeiffer & Horgan* (*Gregory S. Menegaz*), for the defendant-intervenor Bosun Tools Group Co., Ltd.

Musgrave, Senior Judge:  Before the court, Defendant-Intervenors Saint-Gobain Abrasives, Inc., Hebei Jikai Industrial Group Co., Ltd., Husqvarna Construction Products North America, Inc., Ehwa Diamond Industrial Co., Ltd., and Bosun Tools Group Co., Ltd., ("Intervenors") move for a stay of enforcement of the writ of mandamus issued by the court in *Diamond Sawblades Mfrs.' Coalition v. United States*, 33 CIT __, Slip Op. 09-107 (Sept. 30, 2009) ("Slip Op. 09-107") pending the appeal of that case before the United States Court of Appeals for the Federal Circuit ("Federal Circuit").  Defendant International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") does not oppose the motion for a stay.  Def. Resp. at 2.  For the reasons set forth below, the motion will be denied.

## *Background*

The history of this matter will be summarized here only briefly; familiarity with the previous cases is presumed.  In June 2006 the Department issued a final determination that diamond sawblades imported from the Peoples Republic of China and the Republic of Korea were being dumped on the U.S. market.  However, when the United States International Trade Commission ("ITC" or the "Commission") completed its final investigation, it determined that the domestic

industry was neither materially injured nor threatened with material injury by reason of the subject imports. As a result, no antidumping duty orders were issued and previously collected cash deposits were returned. *See* 19 U.S.C. § 1673d(c)(2).

DSMC challenged the ITC's negative determination in this court. Upon review, the court remanded the matter to the ITC for further consideration of certain issues. On remand, the ITC reversed its position and entered an affirmative determination on the question of threat-of-material-injury. The remand determination was subsequently reviewed by the court and sustained in its entirety, and the court issued final judgment. *Diamond Sawblades Mfrs.' Coalition v. United States*, Slip Op. 09-5, 2009 WL 289606 (CIT January 13, 2009) ("Slip Op. 09-5"). However, other than suspending liquidation, neither the ITC nor Commerce gave effect to the court's decision; both agencies asserted that they had no further duty to effectuate the court's decision because Intervenors had filed an appeal.

DSMC asserted to the ITC and Commerce that each agency had the obligation to effectuate the court's decision in spite of the pending appeal. When they declined, DSMC sought relief in this court by filing mandamus actions against both agencies. In one action (Court No. 06-00247), DSMC sought to compel the ITC to publish a *Federal Register* notice of the affirmative remand determination. Commerce was not named as a party in that matter, so DSMC filed this Court No. 09-00110 to compel Commerce to issue the appropriate antidumping duty orders and to order the collection of cash deposits.

Two of the Intervenors in this case (Court No. 09-00110) also intervened in the proceedings that involved the Commission (Court No. 06-00247). In both cases, the central question

before the court was whether, or to what extent, the government agencies involved had a duty to effectuate a final decision of the Court of International Trade if an appeal had been filed. In both cases, Defendants and Intervenors asserted that, except for suspension of liquidation, decisions of this Court were to be given no effect unless and until the Federal Circuit issued a final and conclusive decision on the matter.

The court addressed both mandamus actions in a combined opinion issued on September 30, 2009, which is the subject of the current motion to stay. *See* Slip Op. 09-107. Pursuant to that opinion, the court granted the writ of mandamus as to Commerce (Court No. 09-00110) and ordered Commerce "forthwith" to issue and publish antidumping duty orders and to order the collection of cash deposits. *Judgment*, Slip Op. 09-107. The court denied as moot the mandamus application as to the ITC, finding that publication was unnecessary because *de facto* notice-publication of the ITC's decision had already occurred. *Id.* On October 7, 2009, Intervenors filed an appeal as to Slip Op. 09-107, and now move to stay the effects of the writ of mandamus pending that appeal.

### *Discussion*

In determining whether a stay should be granted, the court considers the same four factors traditionally considered in deciding whether to grant a preliminary injunction: A movant must demonstrate that (1) without a stay, it will suffer immediate irreparable harm, (2) there is a likelihood of success on appeal, (3) the public interest would be better served by the requested relief, and (4) the balance of hardships on all the parties favors them. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed. Cir.1983).

In weighing these factors, the court employs a "sliding scale," meaning that no single factor is dispositive, and that "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed. Cir. 1993). *See also Michigan Coalition v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991) (holding that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [movants] will suffer absent a stay"). *But see Nat'l Hand Tool Corp. v. United States,* 14 CIT 61, 65 (1990) (noting that "[t]he critical question . . . is whether denial of the requested relief will expose the applicant to irreparable harm.").

## I.  Irreparable Harm

The parties seeking the stay bear the burden of producing "probative evidence" to demonstrate a threat of immediate, irreparable harm. *Nat'l Hand Tool*, 14 CIT at 66.  To establish irreparable harm, the movant must prove that, absent a stay, "some harm will result to [them] that cannot be reasonably redressed in a court of law." *Am. Customs Brokers Co. v. U.S. Customs Service*, 10 CIT 385, 386, 637 F.Supp. 218, 220 (CIT 1986).  Here, Intervenors set forth several allegations as to how that they will suffer "immediate and irreparable" harm if the mandamus order is not stayed.  Mot at 7.  As discussed below, the court finds these allegations to be without merit.

Intervernors first contend that they will suffer immediate and irreparable harm because Commerce's publication of antidumping duty orders would "trigger[] the deadline[]" for the annual administrative reviews.  As a result, one year hence they will be forced to "incur significant financial and administrative costs" by participating in the administrative review, regardless of whether the appeal of Slip Op. 09-5 has been conclusively resolved.  *Id.*  These

allegations fail as a matter of law. It has been firmly established that the cost incurred from participating in administrative review is not irreparable harm. *Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505, 509 (Fed. Cir. 1987) (holding that "'the ordinary consequences of antidumping duty procedures do not constitute irreparable harm.'") (quoting *Toshiba Corp. v. United States,* 657 F.Supp. 534, 535 (1987). Moreover, the alleged harm, which is based upon a hypothetical worst-case scenario that might occur one year from now, is by its very nature speculative and lacking in immediacy. *S.J. Stile Assocs. Ltd. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981) (finding that " a mere possibility of injury" is not irreparable harm).

Intervenors contend next that the publication of an antidumping duty order "serve[s] as immediate public notice that certain exporters are guilty of injurious dumping," which would "have a devastating effect on the foreign exporters' business, reputation, and credibility." Mot. at 8. These allegations are speculative and unsubstantiated. Intervenors offer no evidence whatsoever to support these allegations or logical explanation as to how the publication of an antidumping duty order would be an independent cause of reputational damage given that Commerce has already published a final determination that Intervernors were, in fact, dumping. *See Matsushita*, *supra.*

Intervernors allege further that they will suffer irreparable harm in the absence of a stay because this court violated their due process rights. They contend that "their procedural due process rights were strongly prejudiced" by Slip Op. 09-107 because that determination

> relied heavily on the arguments set forth in the brief filed in a separate appeal (Court No. 06-[00]247), which was not before the Court in the above-captioned appeal . . .. Thus, Defendant-Intervenors and Commerce (through its attorneys at the U.S. Department of Justice) did not have an opportunity to comment on the Commission's arguments since these arguments were not on the record of this action. Moreover, this Court did not permit parties to this action to present oral arguments and, thus,

> this mandamus order . . . was issued without giving Defendant-Intervenors and the
> Government a full opportunity to comment and address this Court's concerns based
> on arguments raised by another party in a separate appeal.

Mot. at 9-10 (citations omitted). These contentions are unpersuasive for several reasons[1]. In considering procedural due process, "the court must first determine whether a protected property or liberty interest exists, then determine what procedures are necessary to protect that interest." *Techsnabexport, Ltd. v. United States*, 795 F. Supp. 428, 435 (1992). "'The essential elements of "due process of law" are notice and opportunity to be heard and to defend in [an] orderly proceeding adapted to [the] nature of [the] case, and . . . require[] that every [litigant] have [the] protection of [a] day in court and [the] benefit of general law.'" *Barnhart v. U.S. Treasury Dept*. 7 CIT 295, 303, 588 F. Supp. 1432, 1438 (1984) (quoting *Blacks Law Dictionary* 449 (5th ed. 1979)). The test is one of fundamental fairness in light of the total circumstances. *Id.* (referencing *Buttny v. Smiley*, 281 F. Supp. 280 (1968)). It is highly unlikely that Intervenors' asserted "entitlement to the benefit of the fair administration of the antidumping duty laws" (as they interpret them) constitutes a valid property interest. Yet, even assuming a statutory right to a "fair and honest process," *see NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998), the described allegations do not constitute a deprivation of procedural due process.

---

[1] Although the violation of constitutional rights is widely recognized as irreparable harm, "cases so holding, however, are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy[,] or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief." *Pub. Service Co. of N.H. v. Town of West Newbury*, 835 F.2d 380, 382 (1st Cir. 1987). The court has reservations as to whether a violation of procedural due process, alleged to have occurred in the lower court proceeding, would constitute *future* irreparable harm, or, for that matter, whether such an allegation is more appropriately the subject for appeal as a part of the process that is due.

First, Intervenors fail to explain how their alleged inability to comment upon any of the Commission's Court No. 06-00247arguments affected the fundamental fairness of the proceedings. Even where the litigants are parties to the same action the Court's Rules do not, without leave of the Court, afford Defendants and Defendant-Intervernors an opportunity to comment on each others' arguments. Furthermore, because the court rejected the Commission's arguments as meritless, it is difficult to imagine how the court could be seen as "relying" upon those arguments, or how Intervenors were prejudiced by not having "an opportunity" to comment on those arguments.

Second, even if the court had "relied heavily" on arguments or legal theories "not on the record" of Court No. 09-00110, Intervenors offer no support for their assertion that doing so would have been a violation of due process, or even that it would have been improper. When a particular issue "is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 99 (1991). *See also Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (*en banc*), *superseded by statute on other grounds*, as recognized in *Morgan v. Principi*, 327 F.3d 1357 (Fed. Cir. 2003).

Finally, the court observes that two of the five intervenors here also intervened in Court No. 06-00247, and were represented by the same counsel in both cases; that the joint brief submitted by Intevenors in Court No. 09-00110 did, in fact, discuss arguments presented by the Commission in Court No. 06-00247, and included as an attachment a preliminary Commission brief; and that Intervenors discussed arguments that they planned to advance in the 06-00247 case. As to

the intervenors' contention that the court "did not permit parties to this action to present oral arguments," the court will only comment that, if Intervenors had wished to present oral arguments on the matter, they should have filed a motion so requesting. They did not.

Additionally, the intervenors appear to argue that proof of irreparable harm should not be required in this case. This argument is based upon a ruling from the Tenth Circuit Court of Appeals holding that "a party seeking injunctive relief need not prove any irreparable harm if the party to be enjoined will engage in conduct prohibited by a statute that affords injunctive relief to prevent such conduct." Mot. at 10 (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir. 1981). Intervenors attempt to explain the relevance of *Lennen* to this matter by asserting that because "this [c]ourt's mandamus order would require Commerce to take actions that are inconsistent with the law" (as they interpret it), *Lennen* requires the court to afford less weight to the irreparable harm factor, and more weight to other factors, such as, presumably, likelihood of success on the merits.

This argument is meritless. *Lennen* has no bearing on this matter. The rule set forth in *Lennen* is only applicable to injunctive relief specifically provided by statute. *Lennen*, 640 F.2d at 259 (holding that because "'Congress has expressly authorized federal courts to grant injunctive relief in furtherance of the express purposes of Section 306, it is not required that irreparable harm or inadequacy of legal remedies first be shown . . . .'") (quoting *State of Tenn. v. Louisville & N. R. Co.*, 478 F. Supp. 199, 210 (D.C. Tenn. 1979)). Because the current matter is unrelated to statutorily-based injunctive relief, the rule set forth in *Lennen* and related cases is irrelevant.

## II.  Likelihood of Success on the Merits

Assessing the "likelihood of success" factor presents a difficult question when applied to a stay because it calls upon the court to determine the likelihood of reversal by the appellate court. Indeed, if the court thought that the Intervenors were likely to succeed on the merits, it would not have ruled against them.  As Judge Watson observed, "it is hard to imagine a judge ever answering that question in the affirmative unless he had a cynical view of his opinion or the wisdom of the appellate court." *American Grape Growers Alliance for Fair Trade v. United States*, 9 CIT 505, (CIT 1985) 1985 WL 25781 at *2.  However, it is also a given that "[w]henever decisions of one court are reviewed by another, a percentage of them are reversed." *Brown v. Allen,* 344 U.S. 443, 540, 73 (1953) (Jackson, J., concurring) (maintaining that "[w]e are not final because we are infallible, but we are infallible only because we are final").  Accordingly, objective criteria offered for assessing the likelihood of reversal include whether the issues presented are "novel or close" or whether the movant has raised "substantial, difficult and doubtful" questions on the merits.  *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511 (Fed. Cir. 1990); *Alaska Cent. Express, Inc. v. United States,* 51 Fed.Cl. 227 (2001).

The court finds that Intervenors have little chance of success on appeal.  Although the novelty of the questions addressed in Slip Op. 09-107 may, theoretically, increase the likelihood of reversal on appeal, that novelty is not viewed in isolation.  Slip Op. 09-107 did indeed address issues never squarely addressed by the Federal Circuit; however, the position advocated by the intervenors — that, notwithstanding liquidation suspension, this Court's decisions are to be given no effect while the decision is on appeal— constitutes such a radical departure from fundamental

legal principles governing the judicial process that it is difficult to envision an appellate court that would agree with such a result.

## III.  Balance of Hardships

In addressing this factor, Intervenors essentially attempt to re-argue questions already decided in the mandamus action.  However, the Intervenors present no reason and no new information that would compel the court to find that the balance of hardships runs in their favor, and as discussed supra, they have provided no evidence of irreparable harm.  Furthermore, as noted in Slip Op. 09-107, the Commission determined that DSMC was imminently threatened with material injury by reason of the dumped imports, a condition that antidumping duties is intended to remedy. Accordingly, the court cannot conclude that  the balance of hardships favors Intervenors.

## IV.  Public Interest

Intervenors arguments in this regard may be boiled down to a contention that the public interest is best served by a stay because Slip Op. 09-107 is, in their mind, incorrect. Intervenors contentions in this regard were discussed at length in Slip Op. 09-107 and the court will not revisit these issues here.

### *Conclusion*

In applying the standards outlined above to the facts of this case, the court must conclude that Intervenors have failed to demonstrate the need for a stay.  Accordingly, the motion is denied.

**SO ORDERED**.

/s/  R. Kenton Musgrave
R. KENTON MUSGRAVE, Senior Judge

Dated:  November 4, 2009
       New York, New York