831 F.2d 1028
 9 ITRD 1326, 56 USLW 2264, 6 Fed. Cir. (T) 1
 UST, INC. and Tsubakimoto Chain Co., Plaintiffs-Appellants,
v.
The UNITED STATES, Malcolm Baldridge, Secretary of Commerce;
Bruce S. Smart, Jr., Undersecretary of Commerce for
International Trade; Paul Freedenberg, Acting Assistant
Secretary of Commerce for Trade Administration; Gilbert L.
Kaplan, Deputy Assistant Secretary for Import
Administration; Leonard M. Shambon, Director, Office of
Compliance, Defendants-Appellees.
 No. 87-1134.
 United States Court of Appeals,
Federal Circuit.
 Oct. 15, 1987.
 
 Robert E. Burke, of Barnes, Richardson & Colburn, Chicago, Ill., argued for plaintiffs-appellants; David A. Riggle and David J. Craven of Barnes, Richardson & Colburn, Chicago, Ill., of counsel.
 Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee U.S.; With her on brief were Richard K. Willard, Asst. Atty. Gen., and David M. Cohen, Director; Douglas A. Riggs, Gen. Counsel, M. Jean Anderson, Chief Counsel for International Trade, and John D. McInerney, Attorney-Advisor, U.S. Department of Commerce; of counsel.
 Douglas E. Phillips of Covington & Burling, Washington, D.C., argued for defendant-appellee American Chain Ass'n; David E. McGiffert, of counsel.
 Before FRIEDMAN, NEWMAN, and ARCHER, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 
 1
 This is an appeal from the portion of an order of the Court of International Trade that denied a preliminary injunction barring the Department of Commerce from requiring the appellant to answer questionnaires the Department had issued to them in connection with its administrative review of an antidumping order. We affirm.
 
 
 2
 * In April 1973, the Secretary of the Treasury published T.D. 73-100, a "Dumping Finding" that non-bicycle roller chain (roller chain) "from Japan is being, or is likely to be, sold at less than fair value within the meaning of section 201(a) of the Antidumping Act, 1921, as amended [then 19 U.S.C. Sec. 160(a), now Sec. 1673]." The effect of this finding was to subject the "dumped merchandise" to antidumping duties. 19 U.S.C. Sec. 1673 (Supp. II 1984).
 
 
 3
 The administration of the Antidumping Act was transferred to the Department of Commerce (Commerce) in 1979. See Exec. Order No. 12,175, 3 C.F.R. Sec. 463 (1980). Under 19 U.S.C. Sec. 1675(a) (Supp. II 1984), Commerce is required to review at least annually the basis and amount of duty to be assessed under an antidumping duty order, and to publish the results of each such review in the Federal Register. The Antidumping Act provides that, after such a review, Commerce "may revoke" the antidumping duty order. 19 U.S.C. Sec. 1675(c) (Supp. II 1984). Commerce's regulations authorize revocation
 
 
 4
 [w]henever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order ... are no longer being made at less than fair value ... and is satisfied that there is no likelihood of resumption of sales at less than fair value.... Ordinarily, consideration of such revocation ... will be made only subsequent to [an administrative] review.
 
 
 5
 19 C.F.R. Sec. 353.54(a) (1981-86) (Commerce's Sec. 353.54 is substantively identical to the Treasury regulation that it replaced, Sec. 153.44 (1980)).
 
 
 6
 Prior to revoking an antidumping order, Commerce publishes a "Notice of Tentative Determination to Revoke or Terminate." 19 C.F.R. Sec. 353.54(e) (1981-86). "As soon as possible after publication," 19 C.F.R. Sec. 353.54(f), but after opportunity has been provided "for interested parties to present views with respect to the tentative revocation," 19 C.F.R. Sec. 353.54(e),
 
 
 7
 the Secretary will determine whether final revocation ... is warranted. In cases where an application for a revocation ... is based on the absence of sales at less than fair value with respect to the imported merchandise and the dispositive date for establishing a two-year period of no sales at less than fair value is the date of publication of the Finding or Order, the Secretary may determine that a final revocation ... is warranted only if the firm involved provides information showing no sales at less than fair value with respect to the subject merchandise up to the date of publication of the "Notice of Tentative Determination to Revoke or Terminate."
 
 
 8
 19 C.F.R. Sec. 353.54(f) (1981-86) (typographical errors corrected).
 
 
 9
 The appellant Tsubakimoto Chain Company (Tsubakimoto) manufactures roller chain in Japan, and the appellant UST, Inc. imports roller chain manufactured by Tsubakimoto. Tsubakimoto was one of the companies that T.D. 73-100 found to have engaged in dumping.
 
 
 10
 Following its administrative reviews for the period April 1, 1979, to March 31, 1981, Commerce published on September 1, 1983, its tentative determination to revoke T.D. 73-100 with respect to Tsubakimoto. 48 Fed.Reg. 39,673 (1983). Commerce also stated that prior to issuing a final revocation determination, it would conduct further administrative reviews and that if the tentative determination were made final, it would cover all exports made on or after September 1, 1983. Id. at 39,674.
 
 
 11
 Subsequently Commerce initiated administrative reviews for the period April 1, 1981 to August 31, 1983, and for subsequent periods.
 
 
 12
 The appellants filed their complaint in the present case in August 1986. They sought a writ of mandamus compelling Commerce to complete administrative review and to publish a final determination regarding dumping up to the date of the tentative determination to revoke, and other relief not here pertinent. They also sought a preliminary injunction to bar Commerce from requiring them to answer questionnaires Commerce had issued covering their activities subsequent to the date of the tentative revocation.
 
 
 13
 On October 10, 1986, the Court of International Trade denied a preliminary injunction. UST, Inc. v. United States, 648 F.Supp. 1 (CIT 1986). The court first held that it had jurisdiction to entertain the suit. The court then stated that the appellants contended that they would suffer irreparable injury if an injunction was denied because "[p]reparing the questionnaires will require massive amounts of time and other resources. No procedure exists for recovering these costs. If the tentative revocation can be made final before the questionnaire is completed plaintiffs argue, these costs can be avoided." 648 F.Supp. at 4. The court held that this claim
 
 
 14
 does not satisfy prevailing tests for immediate and irreparable harm. No showing has been made that the data is unavailable or unnecessarily burdensome to procure. Plaintiffs should have ready access to data for the periods in question. It is not enough to show merely plaintiffs may incur costs to complete the required questionnaire.... Expending resources for this purpose, moreover, is a slight burden in light of the requirement and public need for current data. [Citation omitted.]
 
 
 15
 648 F.Supp. at 5.
 
 
 16
 The court continued the case until the government had supplied various reports concerning completion of its administrative reviews of different time periods and stated that "the Court will not decide at this point whether or not to issue a writ of mandamus." 648 F.Supp. at 6.
 
 II
 
 17
 The government contends that the Court of International Trade had no jurisdiction over this suit because 28 U.S.C. Sec. 1581(i) (1982), pursuant to which the appellants invoked the court's jurisdiction, permits judicial review of Commerce's actions under the antidumping laws only when those actions were final, and does not permit review of the interim actions or failures to act that the appellants here challenge. As noted, the Court of International Trade rejected that contention and held that it had jurisdiction. The government asserts that that jurisdictional ruling was erroneous and asks us to vacate the Court of International Trade's order of October 10, 1986 "in its entirety" and to remand the case to that court "with directions to dismiss the action filed by appellants for lack of jurisdiction."
 
 
 18
 The government, however, has not appealed from the portions of the October 10, 1986 order that deal with aspects of the case other than the denial of a preliminary injunction. The government, therefore, cannot seek reversal of those portions of the order. See United States v. American Ry. Express, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); Radio Steel & Mfg. Co. v. MTD Prods., Inc., 731 F.2d 840, 844 (Fed.Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). The government cannot urge its jurisdictional point as an alternative ground for affirmance of the portion of the order that denied a preliminary injunction, since what it seeks through its jurisdictional argument is a vacation of the entire order, including the denial of the preliminary injunction, and a remand to the Court of International Trade with instructions to dismiss the suit for lack of jurisdiction.
 
 
 19
 Traditionally, jurisdictional questions are said to be open at any stage of the litigation, whether or not the parties have raised them. DuBost v. U.S. Patent and Trademark Office, 777 F.2d 1561, 1564 (Fed.Cir.1985); Yarway Corp. v. Eur-Control USA, Inc., 775 F.2d 268, 273 (Fed.Cir.1985). It does not necessarily follow, however, that in the particular circumstances here we should consider the jurisdictional issue, and we decline to do so. The government has informed us that "nearly identical jurisdictional arguments" are presented in the consolidated appeals in Sharp Corp., et al. v. United States, et al., Appeal Nos. 87-1087 and 87-1252, and in Toshiba Corp. et al. v. United States, et al., Appeal Nos. 87-1087 and 87-1253, in which the government is the appellant. We leave it to the court to deal with the issues in those cases. Nothing we say here is intended to indicate any views upon either the merits of the jurisdictional issues or the appropriateness of the court considering them in those cases.
 
 III
 
 20
 On the merits, this case is controlled by our recent decision in Matsushita Elec. Indus. Co. v. United States, 823 F.2d 505 (Fed.Cir.1987). There the Court of International Trade, speaking through a different judge, granted a preliminary injunction similar to that the appellants sought here. The court found that the company subject to the dumping order would suffer irreparable injury if it were required to answer Commerce's questionnaires with respect to its actions subsequent to the tentative determination to revoke the dumping order with respect to that company.
 
 
 21
 This court reversed the preliminary injunction, holding that the finding of irreparable injury was clearly erroneous. We stated:
 
 
 22
 The expenses and effort involved in the defense of litigation do not constitute "irreparable injury" that may justify a preliminary injunction. See FTC v. Standard Oil Co. of Cal., 449 U.S. 232, 244 [101 S.Ct. 488, 495, 66 L.Ed.2d 416] (1980); Renegotiation Bd. v. Bannercraft Co., 415 U.S. 1, 24 [94 S.Ct. 1028, 1040, 39 L.Ed.2d 123] (1974). Similarly, "the ordinary consequences of antidumping duty procedures do not constitute irreparable harm." Toshiba Corp. v. United States, 657 F.Supp. 534, 535 (CIT 1987); see also UST, Inc. v. United States, 21 Cust.B. & Dec. No. 12, p. 38, 42 (CIT 1987); UST, Inc. v. United States, 648 F.Supp. 1, 5 (CIT 1986); Nissan Motor Corp. in U.S.A. v. United States, 21 Cust.B. & Dec. No. 4, p. 32, 37 (CIT 1986); Hyundai Pipe Co. v. United States Int'l Trade Comm'n, 654 F.Supp. 174, 176-77 (CIT 1986).
 
 
 23
 The Court of International Trade did not find anything unique about the "effort in both human and other resources" that Matsushita would have to "expend" to comply with Commerce's seemingly routine requests. Cf. Toshiba, 657 F.Supp. at 535. As the court noted in Hyundai, "Commerce issues questionnaires in every case where a party requests administrative review under [19 U.S.C. Sec. 1675]." 650 F.Supp. at 176.
 
 
 24
 Matsushita, 823 F.2d at 509.
 
 
 25
 That holding is fully applicable to the present case and requires affirmance of the Court of International Trade's denial of a preliminary injunction because the appellants failed to show irreparable injury. Matsushita cannot be distinguished, as the appellants attempted to do at oral argument, on the ground that in this case, unlike Matsushita, Commerce already had completed its administrative review of the period up to the date of the tentative revocation determination when the Court of International Trade decided the case. That difference is irrelevant to the Court of International Trade's determination, which Matsushita compels us to affirm, that the appellants had not shown the irreparable injury necessary to justify a preliminary injunction.
 
 IV
 
 26
 Although we affirm the denial of the preliminary injunction, we are concerned about Commerce's lengthy and seemingly unwarranted delay in completing administrative reviews of antidumping orders. The failure promptly to determine whether to make final a tentative decision to revoke is particularly troublesome. The companies subject to antidumping orders from which they seek relief understandably are frustrated and angry when they seem unable to obtain an expeditious decision on their claim. The result is that they are impelled to seek judicial assistance, thereby producing additional litigation that would be unnecessary if Commerce moved with proper dispatch.
 
 
 27
 The delay by Commerce appears attributable in part to a misunderstanding of our decision in Freeport Minerals Co. v. United States, 776 F.2d 1029 (Fed.Cir.1985). As we pointed out in Matsushita, we held in Freeport Minerals only that the data upon which Commerce relied in determining whether to make final a tentative determination to revoke "must be current 'up to the date of publication of the "Notice of Tentative Determination to Revoke or Terminate." ' " 823 F.2d at 507. We did not hold, however, that the data must be current up to the date of the final determination. Indeed, in view of Commerce's extensive reviews of periods subsequent to tentative determinations and the time-consuming nature of such reviews, a requirement that the data be current to the date of the final revocation determination frequently would make it impossible ever to render a final determination on revocation.
 
 
 28
 We are not suggesting, however, that Commerce may never consider data concerning events after publication of the tentative decision to revoke. The Commerce regulation authorizes the revocation of an antidumping duty order only if "the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order ... are no longer being made at less than fair value ... and is satisfied that there is no likelihood of resumption of sales at less than fair value...." 19 C.F.R. Sec. 353.54(a) (1981-86). We cannot say that in order to determine whether "there is no likelihood of resumption of sales at less than fair value," the Secretary may not consider events after the date of the tentative revocation decision. The extent to which such post-tentative revocation decision data are required is a matter largely within the Secretary's discretion, and the answer depends upon all the facts of the particular case.
 
 CONCLUSION
 
 29
 The portion of the order of the Court of International Trade that denied a preliminary injunction is
 
 
 30
 AFFIRMED.