MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; Matsushita Electric Corporation of America; Panasonic Hawaii, Inc.; Matsushita Electric of Puerto Rico, Inc.; Victor Company of Japan, Ltd.; US JVC Corp., Plaintiffs,

v.

The UNITED STATES; the Department of Commerce; Malcolm T. Baldrige, Secretary of Commerce; Bruce Smart, Under Secretary of Commerce for International Trade; Paul Freedenberg, Assistant Secretary of Commerce for Trade Administration; Gilbert B. Kaplan, Deputy Assistant Secretary of Commerce for Import Administration, Defendants.

Court No. 86–07–00902.

United States Court of International Trade.

May 25, 1988.

Weil, Gotshal & Manges, A. Paul Victor, Stuart M. Rosen, Philip A. Byler, Charles H. Bayar, and Debra J. Pearlstein, New York City, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice (Jeanne E. Davidson); of counsel: John D. McInerney, Attorney–Advisor, Office of the Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge:

The long and tortuous history of this case, which involves events occurring during the past 8–15 years, is extremely troublesome. The multitude of motions and correspondence submitted by the parties is alarming, yet, in essence they all focus on the authority Commerce possesses, and the process Commerce should employ, in revoking an antidumping duty order. Plaintiffs challenge delays by Commerce in completing annual administrative reviews, delays in issuing a final decision on revocation, and the decision by Commerce to initiate

1. Pub.L. 96–39, 93 Stat. 144 (1979).

2. Pub.L. 96–39, § 751, 93 Stat. at 175. The Trade and Tariff Act of 1984 amended § 751, eliminating automatic annual reviews, and now

another administrative review. The thrust of these issues shall be decided in only addressing defendants' motion to dismiss for lack of jurisdiction or failure to state a claim upon which relief may be granted and motion for summary judgment, and plaintiffs' motion for partial summary judgment. In order to properly place in perspective the nature of these motions, it is essential to outline the background of this action.

## BACKGROUND

Plaintiffs, manufacturers and/or importers of televisions from Japan, are subject to an antidumping finding, T.D. 71–76, since March 1971, covering television receiving sets, monochrome and color, from Japan. On April 28, 1980, plaintiffs entered into a settlement agreement with the United States, whereby plaintiffs paid approximately $12 million to settle their liability for dumping duties assessed on entries of televisions imported by plaintiffs on or before March 31, 1979. In addition to foregoing these claims, the United States agreed to use its best efforts to ensure the appraisement and liquidation of plaintiffs' entries, to revoke the antidumping finding to which plaintiffs were subject as soon as the facts and circumstances warranted, and to use the "traditional methodology" when conducting administrative reviews of this order.

Thereafter, responsibility for administration of the dumping laws was transferred to Commerce. Additionally, the Trade Agreements Act of 1979,[1] became effective immediately prior to the date of the settlement agreement. The instant action arises out of the administration of the annual review procedures established by § 751 of that Act, 19 U.S.C. § 1675 (1982 and Supp. III 1985),[2] which provides in pertinent part:

**(a) Periodic review of amount of duty.—**

(1) At least once during each 12–month period beginning on the anniversa-

provides that reviews will only be conducted upon receipt of a timely request. Pub.L. 98–573, § 611(a)(2)(A), 98 Stat. 2948, 3031 (1984).

ry of the date of publication of ... an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, ... the administering authority, after publication of notice of such review in the Federal Register, shall—

* * * * * *

(B) review, and determine ... the amount of any antidumping duty....

* * * * * *

**(c) Revocation of ... antidumping duty order.**—The administering authority may revoke, in whole or in part, ... an antidumping duty order, ... after review under this section.

The regulations implementing § 751 outline the procedures for revocation of a dumping order based on the results of these administrative reviews. Upon application, if there have been no sales at less than fair value ("LTFV") for at least two years following the antidumping finding or order, the Secretary (Commerce) may act to revoke the antidumping finding or order. 19 C.F.R. § 353.54(b). If the § 751 review results indicate that revocation may be appropriate, the Secretary will publish a notice of tentative determination to revoke if the parties subject to the revocation provide in writing for reinstatement of the order if circumstances indicate the resumption of dumping. 19 C.F.R. § 353.54(e). Further, a final decision on revocation shall be made as soon as possible after the preliminary determination to revoke is published. 19 C.F.R. § 353.54(f). However, the decision on whether final revocation may be warranted cannot be issued unless there are no LTFV sales up to the date the notice of tentative revocation was published. *Id.* Final revocation, if granted, will be effective for all unliquidated entries as of that tentative revocation date. The Secretary must be satisfied that there are no longer, and there is no likelihood of resumption of, sales at LTFV. 19 C.F.R. § 353.54(a).

Thus, pursuant to § 751, Commerce commenced annual reviews covering plaintiffs' entries for periods subsequent to the date of the settlement agreement. In the first round annual review for the period April 1, 1979–March 31, 1980, Commerce deter-

mined that plaintiffs' dumping margins were zero or *de minimis*. 46 Fed.Reg. 30,163 (June 5, 1981). In accordance with the regulations, plaintiffs applied for revocation of the dumping order. Commerce also found that during the second round review for the period April 1, 1980–March 31, 1981, the dumping margins for plaintiffs were zero or *de minimis*. 48 Fed. Reg. 37,506 (August 18, 1983) (preliminary). When these results were published, Commerce included a notice of tentative determination to revoke the dumping finding as to plaintiffs. *Id.* at 37,508. In December 1983, a hearing was held on the issue of revocation and interested parties were given until February 1984 to submit briefs on the issue. The final results of the second review were published on June 10, 1985, which concluded there was no dumping by plaintiffs. 50 Fed. Reg. 24,278. In accordance with the regulations, before a final decision on revocation could be issued, it was necessary to conduct annual reviews for the 3rd, 4th, and partial 5th rounds, (April 1, 1981–August 18, 1983). *See* 19 C.F.R. § 353.54(f). This is known as the "gap period"—the time between the last review conducted giving rise to the tentative decision to revoke, and the date that tentative determination was published.

These gap period reviews were all commenced, but without completing any of them, and without rendering a final decision on revocation of the dumping order, Commerce initiated reviews for the full 5th round (April 1, 1983–March 31, 1984), 6th round (April 1, 1984–February 28, 1985), and 7th round (March 1, 1985–February 28, 1986). 51 Fed.Reg. 24,883 (July 9, 1986) and 51 Fed.Reg. 13,273 (April 18, 1986), respectively.

On July 18, 1986, plaintiffs brought this action to compel Commerce to: complete the 3rd, 4th, and partial 5th round reviews, issue a final decision on revocation, employ a certain methodology in conducting these reviews; and sought to enjoin Commerce from conducting the full 5th, 6th, and 7th reviews. Concurrently, plaintiffs sought a preliminary injunction. On August 12, 1986, another judge of this court granted

that application, which prevented Commerce from conducting any further reviews until Commerce issued a final decision on revocation based on reviews up until August 18, 1983, the date of tentative revocation. The order further prohibited Commerce from deviating from the "traditional methodology" in conducting these reviews. *Matsushita Elec. Indus. Co. v. United States*, 10 CIT ——, 645 F.Supp. 939 (1986). However, on July 2, 1987, the Court of Appeals for the Federal Circuit (CAFC) reversed the order, concluding that plaintiffs' participation in the subsequent reviews did not constitute irreparable injury. *Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505 (Fed.Cir.1987). The court stated that "unless and until Commerce revokes the dumping finding, Matsushita is required to complete the questionnaires to facilitate Commerce's administrative reviews." *Id.* at 509.

After the mandate by the CAFC to this effect, Commerce recently resumed the review process and announced its intention to complete the reviews for the gap period, abandon the full 5th, 6th, and 7th reviews, and conduct only one update review for the eighth round (March 1, 1986–February 28, 1987), because the data up until the tentative revocation date, was then over four years old, and the domestic industry requested an additional review.

As to whether Commerce should revoke the dumping finding or employ a certain methodology in completing its reviews, defendants moved to dismiss the action for lack of jurisdiction and for failure to state a claim for which relief may be granted, alleging that there has been no final agency action which represents a justiciable controversy ripe for judicial review. Defendants also moved for summary judgment on plaintiffs' request for the imposition of a scheduling order for the completion of the outstanding reviews and further claim that as a matter of law Commerce may conduct post-tentative revocation date reviews not-

withstanding that previous reviews have not been completed and a decision on revocation has not been issued.

In opposition thereto, and in support of its motion for partial summary judgment, plaintiffs contend that Commerce has unlawfully withheld its final decision on revocation and has acted in disregard of the statutory and regulatory framework. Their argument, in substance, indicates that:

(1) Commerce has failed to abide by 19 U.S.C. § 1675, which provides one year for the completion of annual reviews.

(2) Commerce has intentionally avoided completing annual reviews for the gap period, which must be conducted before a final decision on revocation may be issued.

(3) Commerce has violated 19 C.F.R. § 353.54(f) requiring a final decision on revocation as soon as possible after the tentative revocation decision (when action commenced almost three years had elapsed), although by February 1984 Commerce had compiled a replete record on this issue.

(4) The regulations contemplate that Commerce will not conduct any post-tentative revocation date reviews when the mandatory reviews are outstanding and a final decision on revocation is still pending.

(5) If Commerce had timely completed the mandatory reviews and had revoked the order, it would not have the authority to conduct any subsequent reviews, as plaintiffs would no longer be subject to an outstanding order.

The instant motions were not previously addressed by this court or the court of appeals.

## DISCUSSION

The first issue is whether, pursuant to 28 U.S.C. § 1581(i),[3] the Court has jurisdiction

---

**3.** Section 1581(i) (1982 and Supp. III 1985) provides in relevant part:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section ... the Court of

International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

over this action contesting delays in § 751 reviews and the failure of Commerce to issue a final revocation decision. Defendants assert that plaintiffs' claim presents an interlocutory appeal not sufficiently ripe for judicial review, as no final agency action has been taken; thus, the action is premature and the Court does not have jurisdiction. It is argued that plaintiffs contest an interim agency decision related to the revocation process, which will be incorporated into the administrative review results and subsumed in a final decision on revocation, that will then be subject to judicial review. 19 U.S.C. § 1516a(a)(2)(B)(iii); 28 U.S.C. § 1581(c) (1982 and Supp. III 1985). However, plaintiffs argue that the failure to timely conduct administrative reviews and to timely consider whether final revocation of T.D. 71–76 is warranted will not be incorporated into any final determination and the issue of delay will escape review altogether.

After the parties submitted their memoranda on the jurisdictional issue,[4] our appellate court issued its decision in *Sharp Corp. v. United States,* 837 F.2d 1058 (Fed. Cir.1988). That case was one of three other similar actions where foreign exporters sought to compel Commerce to issue a final decision on revocation and to enjoin Commerce from conducting any further reviews or changing its methodology until the decision to revoke was finalized. In all cases, as here, the plaintiffs sought preliminary injunctions to that end. *See also UST, Inc. v. United States,* 10 CIT ——, 648 F.Supp. 1 (1986), *aff'd,* 831 F.2d 1028 (Fed.Cir.1987); *Nissan Motor Corp. v. United States,* 10 CIT ——, 651 F.Supp. 1450 (1986). In reliance on *Matsushita,* 823 F.2d 505, the CAFC in *Sharp,* held that a preliminary injunction was not warranted as plaintiffs failed to establish irreparable injury. Although the government moved to dismiss for lack of jurisdiction, the court clarified the argument as one addressed to the plaintiffs' failure to exhaust their administrative

remedies, noting that the government therein had expressly recognized the jurisdiction of the Court of International Trade under the All Writs Act, 28 U.S.C. § 1651, "to compel antidumping determinations which have been unreasonably delayed in order to preserve the court's jurisdiction to review those final determinations." 837 F.2d at 1062. However, as the appeal in *Sharp* focused only on the propriety of the preliminary injunction which issued, the court found it unnecessary to discuss whether plaintiffs' actions were prematurely commenced, without awaiting a final determination on revocation by Commerce. *Id.*

In reference to the issue of delay, the Court is of the opinion that the decision in *Sharp* has not impacted negatively on the previous decisions of this court holding that jurisdiction is properly invoked in this type of action, under 28 U.S.C. § 1581(i). *See Nissan,* 10 CIT ——, 651 F.Supp. 1450; *UST,* 10 CIT ——, 648 F.Supp. 1. As this Court reiterated in *Nissan:*

> Section 1581(i) enables this court to entertain actions pertaining to preliminary administrative decisions related to antidumping duty proceedings provided there is no challenge to a determination specified in 19 U.S.C. § 1516a.... It is clear that this is one type of administrative decision which arises between the final determination (of a dumping finding) and the administrative review of that finding, which cannot be contested via § 1516a. In such circumstances the residual jurisdiction of the court may be invoked.

10 CIT at ——, 651 F.Supp. at 1453 (citations omitted).

■ To narrow the jurisdictional boundaries of this court so as to exclude this type of action could present an opportunity for Commerce to completely escape judicial review of its actions by perpetually delaying

* * * * * *

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

4. Supplemental arguments have been constantly submitted by the parties since there have been intervening decisions, after the inception of this case, which affect disposition of the instant motions.

a final decision. *UST,* 10 CIT at ——, 648 F.Supp. at 4; *accord Nissan* 10 CIT at ——, 651 F.Supp. at 1453. In similar circumstances, the doctrine of exhaustion of administrative remedies was not considered a bar to the exercise of the court's jurisdiction. *Id.* at ——, 651 F.Supp. at 1453. Since over four years have elapsed since the tentative decision to revoke was issued and plaintiffs have actively sought revocation or at least the completion of the reviews necessary to determine final revocation, the Court may properly hear the claims regarding Commerce's undue delay in conducting the administrative reviews.

■ Nevertheless, the same conclusion cannot be reached in reference to plaintiffs' claim that this Court should dictate what methodology Commerce must use in conducting these reviews. The Court is of the opinion that it should refrain from doing so, in the exercise of its discretion not to entertain challenges which are not ripe. *Krupp ·Stahl AG v. United States,* 4 CIT 244, 247, 553 F.Supp. 394, 396 (1982). That action, to compel Commerce to evaluate certain data in reaching its preliminary determination, was not ripe for review because a final determination would then follow, which was reviewable, and the consequences of the preliminary results would not cause any undue hardship requiring judicial interference. *Id.* at 245–46, 553 F.Supp. at 395–96.

Plaintiffs presume that deviation from the "traditional methodology" will produce inaccurate dumping margins and prevent revocation. This may ultimately prove either to be a valid contention or mere speculation if the results are not adverse to plaintiffs. It may very well be that the results of the final agency action will obviate the need for judicial review. *FTC v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980). "[T]he possibility exists that the final agency determination may indicate that there [was] no [dumping], in which event the plaintiff[s] would presumably find no reason to complain." *Special Commodity Group v. Baldridge,* 6 CIT 264, 269, 575 F.Supp. 1288, 1293 (1983). As the CAFC

has already determined that a preliminary injunction was not warranted as plaintiffs would not be irreparably injured by Commerce's action, and as the question of methodology will be reviewable upon a challenge to the final revocation decision, the Court is compelled to dismiss this claim.

Thus, the main issue is whether Commerce may conduct an eighth round review and use those results in determining final revocation, or whether Commerce should be enjoined from such action until it completes outstanding reviews up through August 18, 1983, and issues a final revocation decision based on that information.

In its motion to dismiss and motion for summary judgment, defendants argued that the decision in *Freeport Minerals Co. v. United States,* 4 Fed.Cir. (T) 16, 776 F.2d 1029 (Fed.Cir.1985), required Commerce to obtain updated current data upon which to base its revocation decision. *Freeport Minerals* involved a decision by Commerce to revoke an antidumping finding based on data that was over two years old, where Commerce had not conducted a review for the "gap period". The court held that Commerce had an obligation to use current data to decide whether revocation was warranted, and Commerce's failure to obtain recent pricing data constituted an abuse of discretion. *Id.* at 20–21, 776 F.2d at 1032–33.

Defendants contend that Commerce interpreted this decision to mean that the revocation decision at issue herein could not be based upon information only up until August 18, 1983, because that information was already over two years old (at the time the action was commenced) and had become stale. Therefore, in response to its interpretation of *Freeport Minerals,* Commerce undertook to obtain more current information and thus commenced reviews for the full 5th, 6th, and 7th administrative reviews (at the time these motions were filed, Commerce intended to complete these reviews and the eighth round was not yet in existence). Plaintiffs had urged rejection of defendants' interpretation of *Freeport Minerals* arguing that the reference

to "current data," meant up to the date of tentative revocation, and the decision did not require post-tentative revocation date reviews.

In *Nissan*, this Court held that although Commerce had exceeded the statutory deadlines for completing reviews and issuing a final decision on revocation, it was not precluded from obtaining current data from an update review. 10 CIT at ——, 651 F.Supp. at 1455. After the filing of the present motion, and after the decision in *Nissan*, the CAFC rendered its opinion in *UST*, 831 F.2d 1028. Troubled by the apparently unwarranted delays by Commerce in completing administrative reviews of antidumping orders, the court commented on Commerce's misunderstanding of the *Freeport Minerals* decision. The court emphasized that it only required Commerce to obtain information up to the date of the notice of tentative revocation but did not require data current up to the date of the final determination. *Id.* at 1032.

> Indeed, in view of Commerce's extensive reviews of periods subsequent to tentative determinations and the time-consuming nature of such reviews, a requirement that the data be current up to the date of the final revocation determination frequently would make it impossible ever to render a final determination on revocation.

*Id.* at 1032–33.

Thus, in order for Commerce to reach a final decision on revocation, *UST* makes it clear that Commerce is *not required* to conduct any post gap period reviews. Nevertheless, as Commerce still intends to review the eighth round, the question is whether Commerce may, in its discretion, conduct an "updated" review to obtain current information before issuing a final decision on revocation.

Analysis of the Commerce Regulations reveals that 19 C.F.R. § 353.54 vests a great deal of discretion in the Secretary to determine the propriety of revocation. Upon a finding that there are no longer LTFV sales and no likelihood of their resumption, the Secretary *may* act to revoke a dumping finding. 19 C.F.R. § 353.54(a).

Only if it appears to the Secretary that *tentative* revocation *may* be appropriate will notice of tentative revocation be published. § 353.54(e). Further, the Secretary *may* determine that final revocation is warranted only if evidence of no sales at LTFV up until the date of tentative revocation is established. § 353.54(f).

■ Several conclusions are apparent from reviewing these regulations. First, the language employed indicates that Commerce is not compelled to grant revocation, as the above noted sections refer to what the Secretary *may* do when acting on an application for revocation. *Cf.* 19 U.S.C. § 1675(c). Second, the two year period of absence of LTFV sales entitles an interested party to have the application for revocation considered, § 353.54(b); it is not automatic entitlement to revocation. Third, final revocation *may* be granted only if there is evidence of no sales at LTFV up until the date of tentative revocation. The regulations neither authorize nor specifically prohibit Commerce from conducting post-tentative revocation reviews.

Although plaintiffs couch their argument in terms of how Commerce has calculated to deprive them of their entitlement to revocation, it is evident that even if the administrative reviews reveal that plaintiffs have not been dumping for the periods in question, Commerce may exercise its discretion not to grant revocation. *Manufacturas Industriales De Nogales, S.A. v. United States*, 11 CIT ——, 666 F.Supp. 1562 (1987). Application of the court's holding in that case, although dealing with countervailing duties, indicates the latitude afforded Commerce in determining if revocation is warranted. Even if there is a history of lack of subsidization (or dumping), this neither restricts Commerce's authority to determine whether such unfair pricing practices will resume, nor divests Commerce of its discretion to determine if revocation should be granted or withheld. 11 CIT at ——, 666 F.Supp. at 1565. The results of the reviews do not guarantee revocation; even if plaintiffs satisfied the requirements for revocation, "the ITA was not required to grant their request." *Id.*

Furthermore, the court of appeals in *UST* explicitly did not foreclose the possibility of Commerce obtaining additional data, by stipulating:

We are not suggesting, however, that Commerce may never consider data concerning events after publication of the tentative decision to revoke.... We cannot say that in order to determine whether "there is no likelihood of resumption of sales at less than fair value," [pursuant to 19 C.F.R. § 353.54(a) (1981–86)] the Secretary may not consider events after the date of the tentative revocation decision. The extent to which such post-tentative revocation decision data are required is a matter largely within the Secretary's discretion, and the answer depends upon all the facts of the particular case.

831 F.2d at 1033.

Plaintiffs argue that this language in *UST* does not authorize subsequent reviews, but instead refers to data obtained by Commerce at the hearing held back in December 1983 (after the tentative revocation date of August 18, 1983) on the issue of likelihood of resumption of sales. However, § 353.54(e) of the regulations provides the opportunity for interested parties to be heard with respect to the tentative revocation. That section does not expressly state that the hearing is addressed to the issue of likelihood of resumption of LTFV sales, and neither does it preclude another review from being conducted for purposes of addressing that issue.

■ In order to determine whether revocation is warranted, it is alleged that Commerce was acceding to the request of the domestic industry to conduct a current review. The Court cannot conclude that it was an abuse of discretion to initiate a review if the domestic industry explicitly requested one,[5] and the Court will not speculate as to whether it would have been error had Commerce refused to do so. Plaintiffs are correct in stressing that there must be bounds placed on the discretionary powers of Commerce in postponing a revocation decision. *See Chevron Standard Ltd. v. United States*, 5 CIT 174, 563 F.Supp. 1381 (1983). However, after carefully analyzing the regulations and judicial decisions, the Court concludes that it would be erroneous to read into the regulations a restriction against conducting a post-tentative revocation review.

Plaintiffs maintain that Commerce's failure to issue final revocation clearly violates the mandate in 19 C.F.R. § 353.54(f) that the Secretary issue a final decision on revocation as soon as possible after publication of the notice of tentative revocation and Commerce should not be permitted to take advantage of its own failure to abide by the statutory deadlines. Although not addressing this specific language, it has been held that the timetable for completion of § 751 reviews is directory and not mandatory because no prohibition or adverse consequences are imposed for failing to meet the deadline. *Philipp Bros., Inc. v. United States*, 10 CIT ——, ——, 630 F.Supp. 1317, 1323–24 (1986); *American Permac, Inc. v. United States*, 10 CIT ——, ——, 642 F.Supp. 1187, 1191–92 (1986). In reliance thereon, this Court in *Nissan* held that "while the ITA has failed to timely complete its reviews, it is not precluded from obtaining current data upon which to base its final decision." 10 CIT at ——, 651 F.Supp. at 1455. These decisions teach that delays do not invalidate the review process.

Defendants have cited to particular instances which accentuated the delay, for example, challenges to the verification methods consumed a five month time period, and the remand directed by this court to the agency for reconsideration of the second round review results. *See Zenith Elec. Corp. v. United States*, 10 CIT ——, 633 F.Supp. 1382 (1986), *appeal docketed* (from final judgment of January 14, 1988), Nos. 88–1259 and 88–1260 (February 25, 1988). Notwithstanding the government's acknowledgement of the severe backlog it inherited and perpetuated as a result of the Trade Agreements Act of 1979, the Court

---

5. *See* n. 2, *supra; see also Freeport Minerals,* 4 Fed.Cir. (T) 16, 776 F.2d 1029 (revised review procedures designed to afford domestic industry greater access to information).

nonetheless does have the power to fashion an appropriate remedy. *See e.g.*, *Sharp*, 837 F.2d at 1064 (the ultimate determination of whether Commerce should be ordered to decide outstanding administrative reviews or to issue a final decision on revocation are matters clearly left to the CIT's sound discretion).

 While the Court is cognizant of the practicalities which plague administration of the dumping laws, it is outrageous to contemplate the length of delay in administration of T.D. 71–76 and the absurd delay should not be tolerated further. Yet, now Commerce is seeking to perform the eighth round concurrently with the partial fifth round to avoid any further delay. If, as the Court has determined, Commerce is authorized to conduct this latest review, and plaintiffs are genuinely interested in a prompt resolution of the final revocation issue, there would seem to be no pragmatic reason to enjoin the eighth round process until the other rounds are completed. For to do so would only postpone even later the final decision plaintiffs seek.

However, the Court reiterates this caution: "[w]hile the ITA cannot be precluded from obtaining this information, it must also be expected to fulfill its obligations in a timely manner." *Nissan*, 10 CIT at ——, 651 F.Supp. at 1456. The Court has examined proposed schedules for the completion of the outstanding reviews submitted by the parties throughout this litigation. In the exercise of its discretion the Court orders Commerce to complete outstanding reviews for the third, fourth, partial fifth, and eighth rounds, and render a final decision on revocation by November 30, 1988. So ordered.