**DAIDO CORPORATION, Daido Xogyo Co., Ltd. and Enuma Chain Manufacturing Co., Ltd., Plaintiffs,**

v.

**UNITED STATES, Department of Commerce, Barbara H. Franklin, Secretary of Commerce, Timothy J. Hauser, Acting Undersecretary of Commerce for International Trade, Alan Dunn, Assistant Secretary of Commerce for Import Administration, Defendants.**

**Court No. 92–07–00429.**

United States Court of International Trade.

Aug. 12, 1992.

**534**

Tanaka Ritger & Middleton, H. William Tanaka and Patrick F. O'Leary, Washington, D.C., for plaintiffs.

Stuart Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., Dept. of Justice (Jeffrey M. Telep, Atty.), Diane M. McDevitt, Attorney–Advisor, Office of the Deputy Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., for defendants.

## OPINION AND ORDER

NEWMAN, Senior Judge:

### I.

This antidumping duty action has its genesis in the Treasury Department's ("Treasury") 1973 dumping finding in *Roller Chain, Other Than Bicycle, From Japan,* 38 Fed.Reg. 9,926 (April 12, 1973) and plaintiffs' subsequent efforts to obtain revocation of this finding.

In 1977, Treasury published notices of tentative determinations to modify or revoke the dumping finding as to plaintiffs. 42 Fed.Reg. 41517; 42 Fed.Reg. 54043. Those tentative determinations were never finalized, but subsequently Customs conducted so-called "gap" period and below cost sales investigations.

On January 2, 1980, authority to administer the antidumping statute was transferred from Treasury to the Department of Commerce ("Commerce"). However, the "gap" period and below cost sales investigations were never completed by either Treasury or Commerce. Instead, without belaboring the details, Commerce continued to initiate and conduct further administrative reviews on *Japan Roller Chain* and persistent efforts by plaintiffs to obtain final resolution of the revocation issue were unsuccessful.

On August 11, 1988, and after four additional administrative reviews, Commerce again issued a tentative decision to revoke the dumping finding (backdated to April 1, 1983) with respect to plaintiffs, based on the results of the previously reviewed 1981–82 and 1982–83 periods. *Roller Chain, Other Than Bicycle, From Japan; Tentative Determination to Revoke Antidumping Finding in Part,* 53 Fed.Reg. 30,325 (August 11, 1988). However, revocation based on those review periods was never finalized by Commerce. Predicated upon the holding in *Freeport Minerals Co. v. United States,* 776 F.2d 1029 (Fed.Cir. 1985), to the effect Commerce must use current data for a final revocation decision, Commerce decided to conduct an administrative review of the April 1, 1986–March 31, 1987 period. More than three years passed before Commerce completed the 1986–87 review and on October 3, 1991 published the final results of the 1986–87 review period. *Roller Chain, Other Than Bicycle, From Japan; Final Results of Antidumping Duty Administrative Re-*

*view and Determination Not to Revoke in Part,* 56 Fed.Reg. 50,092 (October 3, 1991). Commerce again found that plaintiffs' dumping margins were *de minimis.* Nevertheless, Commerce still refused to finalize the revocation with respect to plaintiffs because by 1991, the information for the period last investigated (1986–87), was now stale. Hence, Commerce decided that it was required by *Freeport Minerals* to conduct a review for the period up to August 11, 1988, the date of the tentative revocation. *Id.* at 50,093 at comment 1. However, rather than review the period 1987–88, Commerce decided to review the more current April 1, 1990–March 31, 1991 period.

In *Daido Corp. v. United States,* Court No. 91–10–00751, plaintiffs challenged Commerce's failure to revoke the dumping finding based on the 1986–87 review, *Roller Chain, Other Than Bicycle, From Japan,* 56 Fed.Reg. 50,092, 50,093 (Comment 1) (October 3, 1991). That case remains *sub judice.*

On May 22, 1992, and on subsequent dates thereafter, Commerce notified plaintiffs that there would be a delay in the 1990–91 review due to lack of funding. Further compounding plaintiffs' revocation problems, on May 22, 1992 Commerce announced initiation of a new administrative review for the April 1, 1991–March 31, 1992 period (57 Fed.Reg. 21,769), requested by the American Chain Association (the domestics' trade association). Consequently, on May 22, 1992, Commerce sent plaintiffs a 1991–92 review questionnaire with a response deadline of July 6, 1992. Plaintiffs' request of May 27, 1992 to Commerce for deferral of the questionnaire responses pending completion of the 1990–91 review and finalization of the revocation was rejected by Commerce on June 23, 1992.

All of plaintiffs' entries since April 1, 1983 remain unliquidated. Plaintiffs have not been required to make cash deposits for dumping duties on any of the entries.

On July 6, 1992 plaintiffs, Japanese manufacturers and exporters and an American importer subject to the dumping finding, filed this lawsuit bitterly complaining that they have twice satisfied the conditions for revocation, but that the repeated administrative delays have stifled plaintiffs' persistent efforts for over fifteen years to obtain a revocation in accordance with the regulations. Plaintiffs complain that without revocation, they will continue to be subjected to administrative reviews at the request of domestic interested parties; and without timely completion of the reviews, plaintiffs are prevented from ever obtaining revocation.

## II.

Plaintiffs, understandably, express fear that in the 1990–91 review they are again threatened with the consequences of bureaucratic delay and *Freeport Minerals* on their revocation efforts. According to plaintiffs, without judicial intervention, the 1990–91 review and final resolution of the revocation question therein will not, due to Commerce's refusal to allocate the necessary funds and the agency's decision to channel its resources into higher priority steel dumping investigations, be completed by Commerce until 1994 and that by then *Freeport Minerals* will again be raised by Commerce to stifle plaintiffs' revocation efforts.

The remedial relief requested, by way of an order to show cause dated July 6, 1992, is a writ of mandamus, judicial supervision of the 1990–91 and 1991–92 administrative reviews, and imposition of deadlines on Commerce for completion of the preliminary and final results of 1990–91 administrative review. Additionally, plaintiffs seek declaratory, injunctive and mandamus relief regarding Commerce's allegedly untimely distribution of 1991–92 period questionnaires to plaintiffs and refusal to defer answers pending resolution of the revocation issue.

On July 30, 1992, the submission of post-hearing briefs by the parties in this matter was completed by plaintiffs' reply brief, which was received by the Clerk on August 3, 1992.

### III.

■ There is no dispute as to jurisdiction. In view of the causes of action alleged by plaintiffs for mandamus and an injunction, judicial review under 28 U.S.C. § 1581(c) *after* Commerce completes its 1990–91 and 1991–92 administrative reviews would clearly be "manifestly inadequate." Therefore, the court has jurisdiction of this action pursuant to § 1581(i)(4). *See Matsushita Electric Industrial Co., Ltd. v. United States*, 12 CIT 455, 465, 688 F.Supp. 617 (1988); *Nakajima All Co., Ltd. v. United States*, 12 CIT 189, 682 F.Supp. 52 (1988); *Techsnabexport, Ltd. v. United States*, — CIT —, 795 F.Supp 428 (1992). Concerning the "manifestly inadequate" standard and jurisdiction under § 1581(i), see the recent Federal Circuit decision, *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356 (1992).

### IV.

■ Defendants' long-standing disregard for statutory deadlines in administrative reviews has repeatedly been judicially condemned and required judicial intervention. *See UST, Inc. v. United States*, 831 F.2d 1028, 1032 (Fed.Cir.1987); *Matsushita Electric Industrial Co., Ltd. v. United States*, 12 CIT 455, 465, 688 F.Supp. 617 (1988). Here, plaintiffs' urgent need for a writ of mandamus has to a large extent been obviated by Commerce's commitment to plaintiffs and to the court at the hearing on July 8, 1992 to make the necessary allocation of funding to the 1990–91 review and adhere to the following timetable: September 1, 1992 for the preliminary results; November 15, 1992 for the final results. *Tr. of Oral Argument,* July 8, 1992, at 2–3, 16–17. Plaintiffs have accepted the foregoing timetable. Consequently, imposition of the extraordinary remedy of mandamus is deemed unwarranted at this time. However, the court will accede to plaintiffs' request to retain jurisdiction in this case and plaintiffs' application for mandamus will be held in abeyance pending the outcome of Commerce's conformance to the stipulated deadlines for issuing the preliminary and final results of the review. *Cf. Matsushita Electric Industrial Co., Ltd. v. United States*, 12 CIT 455, 688 F.Supp. 617 (1988), *aff'd* 861 F.2d 257 (1988); *Nakajima All Co., Ltd. v. United States*, 12 CIT 189, 682 F.Supp. 52 (1988); *Nakajima All Co., Ltd. v. United States*, 12 CIT 585, 691 F.Supp. 358 (1988); *Nissan Motor Corp. in the USA v. United States*, 10 CIT 820, 651 F.Supp. 1450 (1986); *UST Inc. v. United States*, 10 CIT 648, 648 F.Supp. 1 (1986), *aff'd* 831 F.2d 1028 (Fed. Cir.1987).

### V.

■ The court turns to plaintiffs' request for injunctive relief regarding Commerce's distribution of the 1991–92 administrative review questionnaires to plaintiffs on May 22, 1992 and requiring response by July 6, 1992. Commerce has agreed to an extension of time until July 20, 1992 for plaintiffs' answers to the questionnaires, which extension has now expired.

Plaintiffs predicate their claim of irreparable injury and for "preliminary" and "permanent" injunctive relief on the following grounds: (1) Commerce's distribution of the 1991–92 period questionnaires and refusal to defer answers pending resolution of the revocation issue is, in view of the history of plaintiffs' revocation efforts, arbitrary, capricious, an abuse of discretion and otherwise contrary to law; (2) the bureaucratic failures and delays over the past fifteen years in finalizing and resolving the revocation question have violated not only the antidumping act and regulations, but plaintiffs' Fifth Amendment right to procedural due process; (3) Commerce's established practice of deferring questionnaires in post-tentative revocation date administrative reviews, and the disincentive for Commerce to expeditiously complete the 1990–91 review after receiving answers from plaintiffs for the 1991–92 review; (4) the unnecessary expense of answering the questionnaires before the issue of revocation is resolved—estimated by plaintiffs to be $72,335; (5) Commerce's threats to refuse revocation for plaintiffs' failure to answer the 1991–92 review questionnaires; (6) the distribution of post-tentative revoca-

tion date questionnaires violates 19 C.F.R. § 353.54(f) and casts a cloud on the revocation process.

All of these grounds must be rejected.

## VI.

Regarding plaintiffs' request to enjoin the post-tentative revocation date questionnaires for the 1991–92 review until resolution of the revocation question on the ground of expense, the holdings in *Matsushita Electric Industrial Co. v. United States*, 823 F.2d 505 (Fed.Cir.1987); *UST, Inc. v. United States*, 831 F.2d 1028 (1987); and *Nissan Motor Co. in the USA v. United States*, 10 CIT 820, 651 F.Supp. 1450 (1986) are adverse to plaintiffs' claim of irreparable injury. Ordinary burdens and expenses associated with antidumping procedures, even those incurred in answering questionnaires pending a final determination to revoke the antidumping finding, do not constitute "irreparable" injury. *Nissan Motor Co. in the USA.*

## VII.

Plaintiffs' fear that answering the 1991–92 questionnaires will serve as a disincentive for Commerce to complete the 1990–91 review is obviated by defendants' commitment to complete the latter review according to a timetable, *supra.*

## VIII.

The initiation of the 1991–92 review and distribution of questionnaires to plaintiff do not, *per se*, impair plaintiffs' Fifth Amendment procedural due process rights pertaining to revocation. The several hypothetical scenarios postulated by plaintiffs wherein revocation could be ultimately postponed or denied by Commerce if plaintiffs were to now respond to the questionnaires are not presently before the court and do not support plaintiffs' claim of denial of due process. *See Techsnabexport, supra.*

## IX.

Plaintiffs further contend that in distributing the 1991–92 questionnaires, Commerce departed from its "established practice" of deferring administrative review questionnaires after the date of notice of tentative revocation and pending the final decision. Thus, plaintiffs point up that following the August 11, 1988 notice of tentative revocation, 53 Fed.Reg. 30325, Commerce deferred the questionnaires to plaintiffs in the three *Japan Roller Chain* administrative reviews in the 1987–1990 period pending completion of the 1986–87 review and resolution of the revocation issue. Further, plaintiffs "believe" that similarly Commerce did not send post-tentative revocation date questionnaires to Tsubakimoto Chain Co., Ltd., another Japanese manufacturer who sought and obtained a revocation of the *Japan Roller Chain* finding in the 1980s. Nonetheless, plaintiffs cite no evidence that the particular questionnaire deferrals referred to were granted by Commerce pursuant to an "established policy." Accordingly, this case is distinguishable from *Katunich v. Donovon*, 8 CIT 297, 299, 599 F.Supp. 985, 986 (1984) (Secretary of Labor had an established judicially approved policy of assessing import injury by comparing "increases of imports" for the year of separation with the year immediately prior to separation); and *Armco, Inc. v. United States*, —— CIT ——, ——, 733 F.Supp. 1514, 1530–31 (1990) (Commerce adopted a methodology for allocating foreign producers' countervailable benefits on the basis of the standard fifteen year useful life for steel industry assets).

## X.

■ Plaintiffs argue, with superficial plausibility, that sending out a questionnaire for a post-tentative revocation date review is inconsistent with 19 C.F.R. § 353.54(f),[1] since *if* the revocation is finalized, all merchandise entered after the tentative revocation date will be liquidated as

---

**1.** This regulation provides that "ordinarily, a revocation * * * will be effective with respect to all merchandise which is the subject of the revocation * * * entered, or withdrawn from

warehouse, for consumption on or after the date on which the 'Notice of Tentative Determination to Revoke or Terminate' is published in the Federal Register."

entered without any reference to the dumping finding. However, plaintiffs' interpretation of the regulation must be rejected.

The statute and regulations permit revocation of dumping findings under certain conditions, but revocation is discretionary. *Sanyo Electric Co. v. United States,* —— CIT ——, Slip Op. 91–110 at 3–4, 1991 WL 274458 (December 6, 1991); *Toshiba Corp. v. United States,* —— CIT ——, Slip Op. 91–107 at 3–4, 1991 WL 255440 (November 26, 1991). Commerce is not required by the regulation to assume that a tentative decision to revoke will be finalized. Initiation of a post-tentative revocation date review and issuance of questionnaires is consistent with the regulation and does not require Commerce to postpone distributing questionnaires pending completion of an administrative review. *See UST,* 10 CIT at 652–53, 648 F.Supp. at 4–5, *Nissan,* 10 CIT at 821–22, 651 F.Supp. at 1452–53, and *Matsushita,* 12 CIT at 465–66, 688 F.Supp. at 624–25. In sum, the regulation relied on by plaintiffs merely provides that if ·a dumping finding is revoked, merchandise entered after the notice of tentative revocation must be liquidated without antidumping duties; the regulation has no bearing on post-tentative revocation administrative reviews or questionnaires.

In summary, there is no basis in law or equity for enjoining Commerce from requiring plaintiffs to answer the 1991–92 review questionnaires, nor does Commerce have any statutory or regulatory mandate to refrain from distributing the questionnaires to plaintiffs at this time. Plaintiffs' response to the questionnaires within a reasonable time after the issuance of this order should not unduly hinder or delay the 1991–92 review, and therefore the issue of retaliation for failure to answer the questionnaires should not arise. In any event, should plaintiffs claim during the pendency of this action that the alleged threat of retaliatory refusal to revoke for failure to answer the questionnaires by the extended deadline has materialized in the course of the 1990–91 review, this court will reconsider plaintiffs' requested injunctive and mandamus relief for such retaliation.

### ORDER

Accordingly, it is hereby ORDERED:

(1) plaintiffs' request for a writ of mandamus is held in abeyance pending timely receipt by this court of the preliminary and final results of the 1990–91 review in accordance with the timetable referenced above. In the event that Commerce should fail to comply with the timetable, an appropriate writ of mandamus will then be reconsidered;

(2) plaintiffs' applications for injunctive relief or alternatively, mandamus to defer questionnaire responses for the 1991–92 review and to address Commerce's threat to deny revocation in retaliation for plaintiffs' nonresponse is denied at this time.