**SHARP CORPORATION and Sharp Electronics Corporation, Plaintiffs,**

v.

**UNITED STATES, et al., Defendants.**

**Court No. 86–10–01299.**

United States Court of International Trade.

March 28, 1990.

Donovan, Leisure, Newton and Irvine, Peter J. Gartland and Thomas R. Trowbridge, III, New York City, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeanne E. Davidson, Washington, D.C., for defendants.

## OPINION

MUSGRAVE, Judge.

Plaintiffs Sharp Corporation and Sharp Electronics Corporation ("Sharp") have petitioned the Court for a rehearing of this Court's opinion and order of November 15, 1989 (see Slip Op. 89–160, 725 F.Supp. 549), denying its petition for writ of mandamus, and dismissing its complaint for failure to state a claim.

In the pleadings and during oral argument, plaintiff stressed that the International Trade Administration of the U.S. Department of Commerce ("Commerce") had made misrepresentations concerning the conduct of ongoing administrative reviews relevant to this action. Commerce, so plaintiff claims, misrepresented the status of those reviews not only to this Court, but to the Court of Appeals for the Federal Circuit. These circumstances are alleged to fully justify a rehearing.

Sharp's allegations center on the fifth, sixth and seventh administrative reviews of Treasury Decision 71–76, an outstanding antidumping duty order covering television receiving sets, both monochrome and color, exported to the United States from Japan at less than fair value. See 36 Fed.Reg. 4597 (March 10, 1971). By letter dated August 13, 1986, Commerce requested additional information to assist in the selection of appropriate home market comparison models for those reviews, informing Sharp that failure to provide such data would result in the use of best information available ("BIA").

Sharp responded on September 12, 1986 by invoking Matsushita Electric Industrial Co. v. United States, 10 CIT 547, 645 F.Supp. 939 (1986), in which this Court (Judge Rao) enjoined Commerce from conducting further administrative reviews until a final determination had been made regarding revocation of T.D. 71–76 with respect to Matsushita.[1] Claiming that the circumstances in its case were identical to those in Matsushita, Sharp requested Commerce to refrain from conducting further administrative reviews until a decision on revoking the antidumping order had been reached.

Commerce answered this request by letter dated September 22, 1986. Noting that no informational responses were received from Sharp, even after an extension of time had been granted for Sharp to provide the information, Commerce determined to use best information available for assessing the fifth, sixth and seventh round administrative reviews. Shortly thereafter, plaintiff filed its complaint with this Court.

---

1. This preliminary injunction was reversed by the Court of Appeals for the Federal Circuit in *Matsushita Electric Industrial Co. v. United States,* 823 F.2d 505 (Fed.Cir.1987).

Sharp's position in this motion for a rehearing relies on purportedly conflicting statements relating to the fifth, sixth and seventh administrative reviews made by Commerce after the letter of September 22, 1986 noted above. Citing a sworn statement by an employee of Commerce, Sharp claims that Commerce—instead of proceeding with BIA on the fifth through seventh reviews—had instead suspended the reviews, thereby contradicting—and countermanding—the course of action contemplated in the September 22nd letter.

Based on this alleged misrepresentation, plaintiff asserts that the Court of Appeals for the Federal Circuit was deceived into vacating the preliminary injunction which this Court (Judge Rao) had issued on March 5, 1987.[2] The court based its decision to vacate, claims plaintiff, on a finding that Sharp suffered no "irreparable injury" by having to comply with Commerce's request for additional information. This finding, in turn, was apparently based on Commerce's suspension of two of the three review rounds noted above. "[A]t the time when the CIT issued the preliminary injunctions in *Toshiba* and *Sharp*, Commerce was only asking Toshiba and Sharp to respond to a single questionnaire covering a one year time period." *Sharp Corp., et al. and Toshiba Corp., et al. v. United States*, 837 F.2d 1058, 1063 (Fed.Cir.1988).[3] Thus, plaintiff argues, if Commerce had acknowledged that all three reviews were, in reality, ongoing, the Court of Appeals would have reached a different conclusion, to wit: that compliance with Commerce's requests constituted "irreparable injury," and would have left intact the preliminary injunction.

Following the appeals court's reversal of that injunction, Commerce then stated it would "not complete the sixth, seventh or eighth reviews, or that part of the fifth review covering the post-tentative period, prior to making its revocation decision as to plaintiffs ... plaintiffs will only have to provide data for one post-tentative period prior to the final decision on revocation." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Issuance of Writ of Mandamus at 6 (May 20, 1988).

In the parties' Joint Status Report of July 13, 1989, Commerce again announced that no further action would be taken with regard to the sixth and seventh reviews, as well as the eighth and tenth, unless Sharp's request for revocation was denied. Joint Status Report at 4.

Plaintiff asserts that these statements by Commerce were "all a charade." Plaintiff's Petition for Rehearing at 8. On November 3, 1989 (11 days *before* the Court issued Slip Op. 89–160), Commerce published a Notice of Preliminary Results in the fifth through seventh administrative reviews, stating it had used BIA because "Sharp failed to provide supplementary model match data that we requested ..." 54 Fed.Reg. 46434. In effect, then, Sharp claims that notwithstanding the representations made to both Courts, Commerce had never suspended those three reviews; that the reviews had, in fact, been proceeding all along. Therefore, argues Sharp, at the time when the Court of Appeals considered vacating the preliminary injunction, Commerce had not mooted its demands for information relating to those three review rounds. Since the court reversed the injunction on a finding of no irreparable inju-

---

**2.** The order enjoined Commerce from conducting any administrative reviews covering rounds after the date of tentative revocation (August 18, 1983, *see* 48 Fed.Reg. 37508), and from taking any other actions inconsistent with finalizing the revocation decision regarding T.D. 71–76. *See Sharp Corp. and Sharp Electronics Corp. v. United States, et al.,* 11 CIT 434 (1987).

Judge Rao issued a similar injunction in *Toshiba Corp., et al. v. United States, et al.,* 11 CIT 141, 657 F.Supp. 534 (1987), which was vacated by the Court of Appeals in *Sharp Corp., et al., and Toshiba Corp., et al. v. United States, et al.,* 837 F.2d 1058 (Fed.Cir.1988).

**3.** Commerce assured the appeals court, as they did this Court, that only an "update" review, at that point covering the seventh round, would be conducted prior to finalizing a decision on revocation of T.D. 71–76 as to Sharp. Thus, "[t]he costs associated with responding to questionnaires and permitting verification in a single administrative review do not constitute irreparable harm of sufficient magnitude to warrant issuance of a preliminary injunction." Proposed Findings of Fact and Conclusions of Law at 7 (October 30, 1986).

ry, which was premised on the belief that two of those three rounds had been suspended, the appeals court was misled into vacating the preliminary injunction; thus, Sharp maintains that this Court, constrained by the appellate reversal, was improperly influenced by the government's misrepresentations. Had Commerce been straightforward with this Court and the appeals court, asserts Sharp, the result would have had to have been different. Because Commerce's misleading assertions are equivalent to errors or irregularities in the trial, *see W.J. Byrnes & Co., Inc. v. United States,* 68 Cust.Ct. 358, C.R.D. 72–5 (1972), a rehearing is claimed to be appropriate.

The government opposes plaintiffs' motion by asserting that Sharp's version of events is plagued by distortions and omissions; that Sharp's current lamentations concerning continuing administrative reviews are premature; and that the petition fails to satisfy the stringent requirements for a rehearing.

Disputing Sharp's characterization of statements made by Commerce concerning the fifth, sixth and seventh reviews, the government argues that its representations were neither inaccurate nor misleading. Commerce claims to have suspended those reviews in order to devote limited resources to finalizing a decision with respect to revocation of the 1971 antidumping order.

The government maintains that Commerce never assured this Court, or the Court of Appeals for the Federal Circuit, that any decisions made by Commerce regarding the fifth, sixth and seventh[4] reviews would not be reinstated following the final decision on revocation. In other words, defendant claims that Commerce put Sharp on notice that use of BIA for those three rounds would follow the revocation decision. Merely because those rounds were suspended during the formu-

lation of the final decision on revocation did not preclude Commerce from relying on BIA, in accordance with its September 22, 1986 letter, once the revocation decision issued, argues defendant.

During oral argument, government counsel attempted to explain the apparent appearance of misrepresentation in this case. The preliminary results of the fifth, sixth and seventh review rounds were published concurrently with the final determination *not to revoke* T.D. 71–76 with respect to Sharp. *See* 54 Fed.Reg. 46434 and 54 Fed. Reg. 46436 (November 3, 1989). Although the revocation decision had, in fact, been reached at the time the final results of the second review were published (*see* 54 Fed. Reg. 35517 (August 28, 1989)), Commerce delayed publication by almost three months. At oral argument, government counsel explained that the revocation decision had "fallen through the cracks." Such oversight seems unfathomable, given that the revocation decision formed the gravamen of Sharp's action.

Indeed, the simultaneous publication of the preliminary results for the three reviews and the final decision not to revoke lends credence to Sharp's assertion that Commerce had been assessing the review rounds all along, rather than suspending them, while finalizing a decision on revocation. To comport with their earlier statements, Commerce should have *first* published the final decision not to revoke, and thereafter reinstated the use of BIA to reach the preliminary results of the fifth, sixth and seventh administrative reviews.

Moreover, the delays in this action by Commerce in fulfilling its statutory responsibilities under the antidumping laws trouble this Court. In order to revoke an antidumping order, the Secretary of Commerce may publish a notice of tentative revocation following a period of no sales at less than fair value ("LTFV") for at least two years

---

**4.** The appeals court reversed the preliminary injunction based on the lack of "irreparable injury" in having to comply with the request for information covering the *seventh* round. This finding appears to contradict the government's statement that "[i]n the early phases of this litigation, the "update" review for Sharp was the

*seventh* review. By the time the appellate court vacated the injunction improperly obtained by Sharp, the seventh review period was no longer the most recent period, and the *ninth* review became Sharp's 'update' review." (*Emphasis supplied.*) Defendant's Opposition to Plaintiff's Petition for Rehearing at 4, n. 3.

following the date of publication of the order. 19 C.F.R. § 353.54(b) (1988). Following administrative reviews of the periods up to date of tentative revocation, and one "update" review, all which must indicate that no LTFV sales have occurred, the Secretary may determine that final revocation is warranted. 19 C.F.R. § 353.54(f).[5]

As noted earlier, the notice of tentative revocation was published on August 18, 1983. 48 Fed.Reg. 37508. Preliminary results of the second review, covering the period April 1, 1980 through March 31, 1981, were also published the same day. 48 Fed.Reg. 37506. Inexplicably, preliminary results of the second review were "republished" on August 30, 1988 (more than *five years* after the initial publication). 53 Fed.Reg. 33164. Final results of this review period were eventually published on August 28, 1989 (yielding dumping margins of .86%). 54 Fed.Reg. 35517.[6] Thus, over *six years* elapsed between the preliminary and final results of the second round review.

Additionally, the decision not to revoke T.D. 71–76 with respect to Sharp appeared on November 3, 1989, *see* 54 Fed.Reg. 46436, nearly 51 months after the notice of tentative revocation.

Despite these delays and the seemingly inconsistent statements made by Commerce, Sharp failed to bring Commerce's alleged misrepresentations to the Court's attention at the time the decision not to revoke was published. Given that this notice issued 11 days before Sharp's petition for a writ of mandamus was denied and its case dismissed, plaintiff had an opportunity to present its concerns to the Court at that time. Even though Commerce delayed publication of the final decision not to revoke from August until November of 1989, the Court doubts whether Sharp would have voiced its allegations at that earlier juncture, having apparently felt no need to do so at the time the decision *was* published.

Therefore, despite the troubling behavior by Commerce, the Court finds that grounds for a rehearing are not present in this action. Plaintiffs' grievances do not resemble an error or irregularity at trial, *see W.J. Byrnes*, 68 Cust.Ct. at 358, nor do they constitute "new evidence which was not available, even to the diligent party, at the time of trial ..." *Sharp Electronics Corp. v. United States*, 729 F.Supp. 1354, 1356 (1990). As noted earlier, any dissatisfaction with statements made by Commerce could have been brought to the Court's attention by Sharp prior to the issuance of Slip Op. 89–160. Therefore, granting plaintiff's motion would merely subject the Court to a reconsideration of previous arguments, an impermissible result under current precedents. *See Bomont Industries v. United States*, 13 CIT ——, ——, 720 F.Supp. 186, 188 (1989); *RSI (India) Pvt., Ltd. v. United States*, 12 CIT ——, ——, 688 F.Supp. 646, 647 (1988); *W.Y. Moberly, Inc. v. United States*, 10 CIT 497, 498, 1986 WL 372 (1986).

The Court also notes that it cannot retain jurisdiction of an action simply to "wait and see what will happen" with the final results of the fifth, sixth, and seventh administrative reviews, as urged by Sharp at oral argument.

Finally, Sharp will have every opportunity to contest (on whatever grounds it may perceive) the final results of the three administrative reviews when Commerce publishes those final results. The proper challenge is then a new action under 28 U.S.C. § 1581(c), not an indefinite continuance of an action under § 1581(i) for which no relief can be granted.

Therefore, plaintiffs' motion for a rehearing is denied, and the Court's order of November 15, 1989, denying the petition for mandamus and dismissing this action, is reaffirmed.

---

**5.** Although 19 C.F.R. § 353 (1988) has been superseded by 19 C.F.R. § 353 (1989), the former regulations governed Commerce's actions during periods relevant to this case.

**6.** Final results of the second review period for other Japanese exporters of television receivers were published over *four years* earlier. *See* 50 Fed.Reg. 24278 (June 10, 1985).